533 A.2d 1363

**ERIE INSURANCE EXCHANGE, Appellant,**

**v.**

**TRANSAMERICA INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 23, 1987.

Decided Dec. 2, 1987.

576

Charles Kirshner, H.N. Rosenberg, Rosenberg, Kirshner, P.A., Pittsburgh, for appellant.

Daniel B. Winters, Robert A. Arcovio, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

This appeal from a declaratory judgment raises the question of whether the appellant Erie Insurance Exchange (Erie), insurer under an automobile liability policy, or the appellee Transamerica Insurance Company (Transamerica), insurer under a homeowner's policy, has the duty to defend and to pay any damages recovered in the actions brought against Bobby Gilbert and Joyce Gilbert, his wife (hereinafter Gilberts), the insured. The lawsuits against the Gilberts [1] arise out of a mishap involving a visitor's automobile unwittingly set in motion by Erin Gilbert, the 3½ year old son of the Gilberts.[2] The Allegheny County Common Pleas Court held that the appellant, Erie, was solely responsible for coverage under the provisions of the automobile liability policy issued to the Gilberts. The Superior Court panel (Spaeth, P.J., Brosky and Olszewski, JJ., with Spaeth dissenting) affirmed the lower court order.[3] We disagree and, now reverse.

In this declaratory judgment action, the parties agreed to the factual background that gave rise to the underlying lawsuits filed against the Gilberts. That factual background was presented to the lower court upon a stipulation of facts which established the following:

1. There were two lawsuits filed against the Gilberts in the Allegheny County Common Pleas Court. In the first, Ronald Craighead, Jr., a minor by Ronald Craighead, Sr. and Louise Craighead, parents and natural guardians, et al., plaintiffs v. Landis Robinson, individual and as agent for New York Life Insurance Company; and Bobby Gilbert and Joyce Gilbert, et al, defendants (*Craighead* action), damages were sought of the Gilberts for bodily injuries sustained by the minor plaintiff. In the second action, Bernard Robinson, Administrator of the Estate of Kevin J. Robinson, plaintiff, v. Landis Robinson, et al., defendant, v. Bobby Gilbert and Joyce Gilbert, additional defendants (*Robinson* action), damages were sought for the death of the minor, Kevin J. Robinson.

2. The minor, Erin Gilbert was not named as a party defendant in either the *Craighead* action or the *Robinson* action. A minor under the age of seven years is conclusively presumed to be incapable of negligence. *Kuhns v. Brugger*, 390 Pa. 340, 135 A.2d 395 (1957).

3. *Erie Insurance Exchange v. Transamerica Insurance Company*, 352 Pa.Super. 78, 507 A.2d 389 (1986).

On March 19, 1976, Landis Robinson, a life insurance agent in the employ of New York Life Insurance Company, Inc., drove to the home of the Gilberts located on Broadhead Street in the City of Pittsburgh. Ms. Robinson parked her automobile on Broadhead Street directly across from the Gilberts' residence. Broadhead Street is a hill and the Robinson vehicle was facing downhill.

Ms. Robinson was admitted to the Gilberts' home where she commenced a conversation with Joyce Gilbert. While Ms. Robinson and Mrs. Gilbert were talking, Ms. Robinson permitted Erin Gilbert to gain possession of the keys to her automobile. The youngster left the house, taking the car keys with him. Young Erin Gilbert apparently was able to enter into the unattended Robinson vehicle and somehow set the car in motion.[4] Once in motion the automobile rolled down Broadhead Street. The runaway vehicle struck two children as it travelled down the hill. One of the children (Ronald Craighead, Jr.) was injured by the vehicle; the other child (Kevin J. Robinson) was killed. Both parties in this appeal acknowledge that the incident occurred away from the premises of the Gilberts.

At the time of the accident the Gilberts owned an automobile which was insured under an automobile liability policy issued by the appellant, Erie. The Gilberts were also insured under a homeowner's policy issued by the appellee, Transamerica. Transamerica does not dispute that except for a policy exclusion relating to claims arising out of the use of motor vehicles, (set out *infra.*), there would be coverage under its policy.

Along with others, the Gilberts were sued by the parties who suffered damages because of the injuries and death that were a result of the vehicle set in motion by young Erin Gilbert. After the Gilberts executed a reservation of rights agreement, the appellant Erie caused appearances to be entered on their behalf in the lawsuits filed against them

4. From the stipulation of facts, it is unclear whether the automobile's motor was started and running when it was set in motion by Erin Gilbert.

and proceeded to defend each action. The appellee, Transamerica, refused to enter an appearance for the Gilberts and declined to participate in any way in the litigation.

In both the personal injury action and the death claim a settlement was negotiated on behalf of the Gilberts.[5] Erie takes the position that the entire cost of defense and the duty to pay the whole settlement sum in each action is the obligation of the appellee, Transamerica. Transamerica, on the other hand, argues that since the alleged injuries and damages arose out of the use of an automobile, the exclusion provisions of the homeowner's policy specifically exclude coverage thereunder.

The question of whether Erie, the automobile liability carrier, or Transamerica, the homeowner's carrier, is responsible for payment of the settlement sum and the cost of defending the suits against the Gilberts, necessarily begins with a consideration of the relevant provisions of the respective insurance policies. In the Erie policy, the pertinent provision is found in the "insuring agreements" and it provides as follows:

I. **Coverage A—Bodily Injury Liability:** To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accidents and *arising out of the ownership, maintenance or use of the automobile.* (Emphasis supplied.)

In the Transamerica policy, the relevant language is contained in the policy exclusions and is as follows:

This policy does not apply:

\* \* \* \* \* \*

a. to bodily injury or property damage *arising out of the ownership, maintenance, operation, use, loading or unloading of:* (Emphasis supplied.)

---

**5.** Each insurer paid one-half of the pro rata share of the settlements. Each insurer incurred expenses for investigation, costs and legal fees. (Stipulation of Facts, pg. 2.)

(2) any motor vehicle owned or operated by or rented or loaned to any Insured,....

Under the Erie automobile policy, *coverage is provided* when the accident causing damages arises out of *"the ownership, maintenance or use of the automobile."* Under the Transamerica homeowner's policy, *coverage is excluded* where the damages arise out of *"the ownership, maintenance, operation, use, loading or unloading of any motor vehicle* owned or operated by ... any Insured."

 At the outset, we recognize certain general rules which we have held applicable in construing insurance policies:

> In *Warner v. Employers' L. Assur. Corp.*, 390 Pa. 62, 133 A.2d 231 (1957), we said: 'While policies of insurance will be construed most strongly against [the] insurer (citation omitted) it is a necessary prerequisite to recovery upon a policy for the insured to show a claim within the coverage provided by the policy.' (Citation omitted.) In *Armon v. Aetna Casualty and Surety Co.*, 369 Pa. 465, 469, 87 A.2d 302 (1952), we held: "A defense based on an exception or exclusion in a policy is an affirmative one, and the burden is cast upon the defendant to establish it." (Citations omitted.)

*Miller v. Boston Insurance Company*, 420 Pa. 566, 570, 218 A.2d 275 (1966). Although this case involves a controversy between two insurers, we will consider each policy from the point of view of the insured and construe each policy most strongly against the insurer. Additionally, the appellee, Transamerica is charged with the burden of proof in attempting to establish that coverage under the homeowner's policy is specifically excluded.

 In interpreting the relevant policy provisions in the context of this case and in light of the above general rules, we direct our attention to the policy-requirement of "use" of the automobile. We focus on "use" as opposed to ownership, maintenance, operation, loading or unloading in that, from the stipulation of facts and the arguments of the parties, there is nothing to suggest that the accident result-

ed from the ownership, maintenance, operation, loading or unloading of the vehicle. Coverage under the Erie policy and exclusion from coverage under the Transamerica policy turns on whether the accident here arose out of *"use"* of the automobile.

In support of its position that the accident is not covered by the automobile policy, Erie argues that the actions of the 3½ year old child in setting the car in motion is not "use" of an automobile. Erie further argues that the gist of the underlying actions against the Gilberts is the Gilberts' failure to control their child. The appellee, Transamerica counters Erie's argument by citing the lower court decision and arguing that the word "use" has a broad enough meaning to cover the actions of young Erin Gilbert in setting the Robinson vehicle in motion. Transamerica also contends that the underlying complaints filed against the Gilberts allege causes of action founded on negligent entrustment. Transamerica's argument continues that since an essential element of negligent entrustment is use of the automobile as the proximate cause of the injury, and since it is impossible to separate negligent entrustment from use, coverage for the accident in this case is provided under the Erie automobile policy and excluded under the homeowner's policy.

The term "use" as employed in the insuring agreement in the Erie policy and in the exclusions in the Transamerica homeowner's policy denotes an element of rational, purposeful conduct. In each instance, the relevant policy language is not directed to mere movement of a motor vehicle. The movement of a automobile for which coverage applies under the Erie policy and is excluded under the Transamerica policy must, in reality, constitute "use."

In the Erie automobile policy, "use" (of an automobile) is employed with the words ownership and maintenance. In the Transamerica homeowner's policy, "use" (of a motor vehicle) is employed with the words ownership, maintenance, operation, loading and unloading. In interpreting the pertinent provisions of each policy, it is stretching policy

construction beyond reasonable bounds to hold that the word "use" includes the maneuvers of a 3½ year old child that happen to set a vehicle in motion.

"The term 'use' has been defined as the general catchall of an omnibus insurance clause, designed and construed to include all proper uses of the vehicle not falling within other terms of definition such as ownership and maintenance." *State Farm Mutual Automobile Insurance Co. v. O'Brien,* 380 F.Supp. 1279 (1974). "The word 'use' in connection with the words ownership [and] maintenance ..., must be taken in its usual meaning of use of a motor vehicle." *Assurance Company of America v. Bell,* 108 Ga.App. 766, 772, 134 S.E.2d 540 (1963).

Of course if the term "use" is construed to embrace all of its possible meanings and ramifications, practically every activity of mankind would amount to a "use" of something. However the term must be considered with regard to the setting in which it is employed.

*State Farm Mutual Automobile Insurance Co. v. O'Brien, supra,* at p. 1281, citing *Great American Indemnity Co. of New York v. Saltzman,* 213 F.2d 743 (8th Cir.1954).

Considering the setting, a 3½ year old child (Erin Gilbert in this case) is not capable of "using" an automobile in a rational, purposeful sense within the meaning of the relevant policy provisions. The unwitting actions of a 3½ year old child in putting an automobile in motion is not "use of an automobile and, is not one of the risks contemplated by the Erie policy or excluded by the Transamerica policy. For one to "use" an automobile in the sense contemplated by the pertinent provisions of the insurance policies in question, the alleged "user" should at least know and understand the uses to which an automobile, as an automobile, may be put. A 3½ year old child, such as Erin Gilbert in this case, does not know how to "use" an automobile.[6]

6. By analogy, if an animal such as a pet dog manages to enter an unoccupied automobile and, by releasing the hand brake or maneuvering the gear shift, sets that vehicle in motion, no one would

We hold that the actions of 3½ year old Erin Gilbert in gaining access to the unoccupied Robinson automobile and setting it in motion does not constitute "use" of that automobile within the contemplation of the relevant provisions of the policies in question. Accordingly, sole coverage for the underlying incident in this case is under the Transamerica homeowner's policy.[7]

 The parties also raise the question of which insurer had a duty to defend the Gilberts in the underlying actions. The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage. In a typical liability policy:

> [T]he insurer agrees to defend the insured against any suits arising under the policy 'even if such suit is groundless, false or fraudulent.' Since the insurer thus agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, our cases have held that the obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy. (Emphasis in original.)

*Gedeon v. State Farm Mutual Automobile Insurance Co.*, 410 Pa. 55, 188 A.2d 320 (1963). If the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover. *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959).

seriously contend that the dog's actions constituted "use" of the vehicle. Simply, it could not be said that the dog was using the automobile.

7. Since we have concluded that the actions of Erin Gilbert in setting the automobile in motion down Broadhead Street did not constitute "use" of that automobile, we do not reach the issue raised by the appellee of whether there is coverage under either policy for "negligent entrustment." Furthermore, there is no evidence in this case to suggest that the Gilberts entrusted the Robinson vehicle to young Erin Gilbert as argued by the appellee.

In reviewing the claims made against the Gilberts in the underlying actions in this case, we find that the allegations set forth therein fail to support a recovery that would be covered by the Erie policy. Conversely, the underlying complaints do allege facts that would support a recovery covered by the Transamerica policy. In the *Craighead* action against the Gilberts, it was alleged that young Erin Gilbert gained entrance to the Robinson vehicle and operated it and/or caused it to move down Broadhead Street resulting in a violent collision.[8] The *Craighead* complaint further alleges that the serious injuries resulting from the violent collision were caused by the negligence of the Gilberts in failing to exercise reasonable care and control over their minor son Erin.[9] In the *Robinson* action wherein the Gilberts are additional defendants, it is alleged that Joyce Gilbert allowed, permitted or instructed the minor child to play with keys to the Robinson automobile.[10] Further, it is alleged that while the young child was playing with the keys, Joyce Gilbert failed to exercise control over the child and the child was permitted to leave the premises and enter the Robinson vehicle and allegedly start and move the automobile.[11] Finally, it was alleged that the Gilberts were negligent in the following respects:

(a) In failing to keep the minor child under control; (b) In failing to observe the minor child; (c) In failing to properly train the minor child; (d) In allowing or permitting the minor child to attempt to operate a motor vehicle; (e) In allowing or permitting the minor child to drive a motor vehicle so as to strike plaintiff's decedent; (f) In allowing or permitting the minor child to play with the keys of the invitee Landis Robinson; (g) In not [exercising] proper parental control over the minor child; and (h) In not exercising that degree of care and caution that parents should under the circumstances.[12]

8. *Craighead* action, paragraph 14 of the complaint.
9. *Craighead* action, paragraphs 23(a) through 23(e) of the complaint.
10. *Robinson* action, paragraph 3 of the complaint.
11. *Robinson* action, paragraphs 4 and 5 of the complaint.
12. *Robinson* action, paragraphs 6a through 6h of the complaint.

Essentially, the pertinent averments in each of the underlying lawsuits are primarily concerned with the Gilberts, as parents, failing to exercise reasonable care and control over their minor son Erin. Because of their failure to exercise control, it is alleged that young Erin was permitted to enter the Robinson vehicle and set it in motion. There is no allegation in either complaint that the Gilberts, or either of them, used the Robinson automobile and, we have held that the action of young Erin Gilbert did not constitute "use.".

■ Lastly, the appellee Transamerica argues that Erie's appeal in this case was untimely and therefore, should be quashed. The appellee contends that this declaratory judgment action was brought in the lower court as a case stated and as such, an appeal may be taken without filing exceptions to the initial findings of the trial court. This is so, argues the appellee, because the trial court's initial findings and order constitute the final judgment of that court. Of course to be timely, the appeal must be filed within thirty days of the trial court's judgment.[13]

Appellee argues that final judgment was entered in the lower court on February 17, 1983 and notice of appeal to the Superior Court was not filed until April 22, 1983, 65 days later. The appellee contends that because of the late filing, this court lacks jurisdiction in that appellate jurisdiction is predicated upon timely filing of the appeal. The appellee further asserts that even though this issue of jurisdiction was not previously raised, its failure to do so does not result in a waiver.[14]

The appellee's neatly woven argument must fall because it rests on a faulty premise, namely, that this action was submitted to the court as a case stated, and the order of the trial court of February 17, 1983 was a final judgment. The declaratory judgment action filed in this case was presented to the trial court upon a stipulation of facts. The stipulation did not identify the action as a case stated, and in it the

13. Rule 903, Pa.R.A.P.
14. Rule 741(b)(1), Pa.R.A.P.

parties did not consent to the court entering a final judgment. "One of the indispensable elements of a case stated is that all parties in interest agree to the entry of judgment by the court upon the facts stated." *Frankel v. Reliance Mutual Life Insurance Co.*, 199 Pa.Super. 295, 184 A.2d 305 (1962). That element is not present in this case.

Even though the Order of Court of February 17, 1983 refers to this case as a case stated and orders that judgment be entered in favor of Transamerica and against Erie,[15] neither the parties nor the court considered that order a final judgment. On February 28, 1983, the appellant filed exceptions to the February 17, 1983 order. The lower court considered appellant's exceptions and the arguments of counsel. On April 18, 1983, the lower court dismissed Erie's exceptions, entering the following Order:

## ORDER OF COURT

AND NOW, to-wit, this 18th day of April, 1983, after oral argument in open Court and upon consideration of the briefs and pleadings filed, it is hereby ORDERED and DECREED that the verdict of the Trial Court is affirmed and the Exceptions of the Plaintiff are dismissed.

In its order dismissing appellant's exceptions, the lower court referred to its previous order of February 17, 1983 as the *verdict* of the trial court. On February 22, 1983, Erie filed a praecipe for judgment on the order affirming the verdict and dismissing the exceptions. Final judgment was entered against Erie and in favor of Transamerica on April

15. The lower court order of February 17, 1983 provided:
AND NOW, to wit, this 17th day of February, 1983, the above matter coming before the Court as a case stated and upon consideration of the Stipulation of Facts agreed to by parties and upon review of the briefs filed, it is hereby ORDERED and DECREED that judgment be entered on behalf of the Defendant, Transamerica Insurance Company and against Plaintiff, Erie Insurance Exchange, for the expenses, fees and contributions made by Transamerica Insurance Company toward settlement of the cases filed at No. GD76–14614 and No. GD77–06055 in this Court.

22, 1983.[16] The notice of appeal to the Superior Court filed on the same day (April 22, 1983) was timely.

The order of the Superior Court is reversed.

ZAPPALA, J., concurs in the result.

Former HUTCHINSON, J., did not participate in the consideration or decision of this case.

16. According to the record, Notice of Judgment was mailed from the prothonotary's office on April 25, 1983.