ROMAN MOSAIC AND TILE CO. and Northern Insurance Co. of New York, Appellants,

v.

AETNA CASUALTY AND SURETY CO. and Pennsylvania Manufacturer's Association Insurance Co., Appellees.

Superior Court of Pennsylvania.

Argued Oct. 28, 1997.

Filed Dec. 31, 1997.

---

Robert B. Mulhern, Jr., Philadelphia, for appellants.

Roseann L. Brenner, Philadelphia, for Aetna Cas. & Sur. Co., appellee.

Gary C. Bender, Media, for PA Manufacturers' Assoc. Ins. Co., appellee.

Before CAVANAUGH, SCHILLER, and MONTEMURO *, JJ.

CAVANAUGH, Judge.

The issue presented in this appeal is one of first impression in Pennsylvania and requires us to determine whether an insurer has the duty to defend and indemnify an insured against claims of sexual harassment and gender discrimination in the workplace under a "personal injury" provision contained in the insured's comprehensive general liability policy which provides coverage for injuries arising out of the offenses of false imprisonment, invasion of privacy, and defamation. For the reasons that follow, we find no duty to defend or indemnify and we affirm the trial court's order which granted summary judgment to the insurers.

The genesis of the present case is a lawsuit filed in the United States District Court for the Eastern District of Pennsylvania against appellant Roman Mosaic and Tile Company (Roman Mosaic) by Constance Jesiolowska, a former Roman Mosaic employee.[1] Ms. Jesiolowska's complaint against Roman Mosaic contained six separate counts. Count I alleged violations of Title Seven of the Civil Rights Act of 1964. Count II alleged violations of the Pennsylvania Human Relations Act. Counts III through VI, respectively, alleged breach of employment contract, constructive discharge and wrongful termination, intentional infliction of emotional distress and outrageous conduct. In

---

* Retired Justice assigned to the Superior Court.

1. The action against Roman Mosaic was initially filed by the Equal Employment Opportunity Commission on behalf of Ms. Jesiolowska, who was subsequently substituted as the plaintiff in her own right.

support of these claims the complaint contained the following factual allegations:

### Factual Allegations

1.  Plaintiff was an employee of Defendant Roman Mosaic and Tile Company since 1980 and through June 1989, and was reinstated to her employment in July 1990 and continued her employment through February 1991.

2.  Plaintiff was under the direct supervision of Blase Primo, Supervisor for Defendant.

3.  During her employment, Plaintiff was subjected to sexual harassment and discrimination on the basis of her gender, female, unlawful and in violation of Sections 703(a) and 703(k) of Title VII, 42 U.S.C. Section 2000E-2(a); Defendant employer has permitted employees to urinate in her work shoes, to make derogatory remarks based on Ms. Jesiolowska's gender, such as referring to her as a "slut", "fat pig" and "whore". Further, Defendant has permitted employees to physically harass Plaintiff by throwing a wheelbarrow at her, by placing her in a wire cage and dragging it around the job site, and placing her in a metal drum and rolling it around the work site. These and other instances have occurred since at least 1982 and continued to the present.

4.  Since at least June 1989, and for years previously, Defendant employer has selected Constance I. Jesiolowska, the only female Tile Mechanic in its employ for layoff from her position of Tile Mechanic because of her sex "female", and by refusing to recall her to work, while at the same time. [sic] Defendant employer retained and/or recalled similarly situated males, and Tile Mechanics after discharging Ms. Jesiolowska[.][F]urther, Ms. Jesiolowska was selected for layoff on a more frequent basis than any other employee on the basis of her gender.

5.  The above conduct resulted in the wrongful termination of Plaintiff's position with Defendant employer.

6.  The above conduct constituted breach of the Plaintiff's employment contract with Defendant employer, particularly as it concerns Plaintiff's medical benefits and pension rights as well as opportunities for future employment.

7.  Plaintiff has sustained severe and permanent psychological injury by reason of Defendant's conduct, and permanent loss of earning capacity, as Plaintiff[,] a skilled Tile Mechanic, cannot return to work in a male-oriented environment, and Defendant has encouraged and permitted the maintenance of a hostile work environment so as to prevent Plaintiff from earning a living in the skilled trade for which she has trained.

Roman Mosaic contacted the three insurers with which it had comprehensive general liability policies in effect at the times plaintiff's alleged injuries occurred, seeking defense and indemnity to the claims raised in plaintiff's Complaint. The Aetna Casualty and Surety Company (Aetna) and the Pennsylvania Manufacturer's Association Insurance Company (PMA) each declined to defend or indemnify on the ground that the plaintiff's injuries were not covered under the terms of their respective policies. The Northern Insurance Company of New York (Northern), however, agreed to defend and indemnify subject to a reservation of rights.

Ultimately, the case settled prior to trial for $150,000, with Roman Mosaic contributing $30,000 and Northern contributing $120,000. Aetna and PMA declined all requests for contribution. Subsequently, Northern and Roman Mosaic brought suit against Aetna and PMA in the Delaware County Court of Common Pleas, alleging bad faith, breach of contract, and unjust enrichment, and seeking equitable contribution and reimbursement for the failure of Aetna and PMA to provide a defense or indemnity to the underlying action.

All parties filed motions for Summary Judgment. The underlying facts of the case were undisputed and the only issue to be decided by the court in disposing of the opposing summary judgment motions was whether the policies should be read to either include or exclude the claims presented in the underlying lawsuit. Appellants contended that Ms. Jesiolowska's injuries, as pled in paragraph three of her complaint, fell under the "personal injury" provisions contained within the

Aetna and PMA policies, the pertinent portions of which are identical and provide that: [2]

> (A) The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies ...

> \*\*\*\*\*

> "Personal injury" means injury arising out of one or more of the following offenses committed during the policy period:
>
> (1) false arrest, detention, imprisonment, or malicious prosecution;
>
> (2) wrongful entry or eviction or other invasion of the right of private occupancy;
>
> (3) a publication or utterance
>
> > (a) of a libel or slander or other defamatory or disparaging material, or
> >
> > (b) in violation of an individual's right of privacy;

Specifically, appellants argued that Roman Mosaic's employee's references to Ms. Jesiolowska as a "slut," "whore" and "fat pig," as pled in paragraph three of the complaint, raised a claim for slander or defamation; that the conduct of Roman Mosaic's employees in placing Ms. Jesiolowska in a cage and metal drum raised a false imprisonment claim; and that the allegations that Roman Mosaic's employees urinated in Ms. Jesiolowska's shoes and threw a wheelbarrow at her raised a claim for invasion of privacy.

The court heard argument on the motions and by order dated July 31, 1996, it denied the joint motion for summary judgment of Northern and Roman Mosaic and granted the summary judgment motions of Aetna and PMA, finding that "[p]aragraph three of [Ms. Jesiolowska's] Complaint against Roman Mosaic ... merely [contained] descriptions of the acts which Jesiolowska claims constituted sexual harassment and gender discrimination *not* false imprisonment, defamation or inva-

sion of privacy." Northern and Roman Mosaic now appeal and allege that the trial court's grant of summary judgment to Aetna and PMA was error because the "allegations of the complaint of Constance Jesiolowska against Roman Mosaic and Tile Company 'arise out of' one of the enumerated offenses identified in the personal injury section of their respective policies." We disagree.

It is well settled that when reviewing the propriety of a trial court's order granting summary judgment, we must view the record in the light most favorable to the non-moving party and determine whether the moving party has established that there exists no genuine issue of material fact and that it is therefore entitled to judgment as a matter of law. *Skipworth v. Lead Industries Assoc.*, 547 Pa. 224, 230, 690 A.2d 169, 171 (1997). The non-moving party is entitled to all reasonable inferences. Any doubts as to the existence of a factual dispute must be resolved in the non-moving party's favor and summary judgment is appropriate only in the clearest of cases. *Kingston Coal Co. v. Felton Mining Co., Inc.*, 456 Pa.Super. 270, 277, 690 A.2d 284, 287 (1997).

■ Turning now to the merits of appellants' issue, it is well settled that an insurer's duty to defend is different from and greater than the duty to indemnify. *Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 509, 603 A.2d 1050, 1052 (1992); *See also Scopel v. Donegal Mutual Ins. Co.*, 698 A.2d 602, 605 (Pa.Super.1997) (the duty to defend is more encompassing than the duty to indemnify). It has long been the law in Pennsylvania that the *nature* of the allegations contained in a complaint control whether an insurer must defend a policyholder. *Id.* (emphasis added). Our supreme court has stated, "[i]t is not the actual details of the injury, but the *nature of the claim* which determines whether the insurer is required to defend." *Springfield Twp. v. Indemnity Ins. Co. of North America*, 361 Pa. 461, 464, 64 A.2d 761 (1949) (emphasis added).

---

**2.** Appellants conceded that Ms. Jesiolowska's injuries did not fall under the "bodily injury" or "property damage" provisions of either policy.

■ If the factual allegations of the complaint against the insured state a claim which would potentially fall within the coverage of the policy, then the insurer has the duty to defend. *Biborosch, supra,* at 509, 603 A.2d at 1052 (citing *D'Auria v. Zurich Ins. Co.,* 352 Pa.Super. 231, 234, 507 A.2d 857, 859 (1986)).

> In making this determination the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured. *Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A.2d 484 (1959). Thus, we must look to two sources to decide whether a duty to defend exists. We must interpret the insurance policy to determine the scope of coverage. Then, we must analyze the complaint filed against the insured to determine whether the claims asserted potentially falls [sic] within that coverage.

*Biborosch, supra,* at 509–10, 603 A.2d at 1052.

■ In keeping with the standards enumerated above, we must first determine the scope of coverage. In the instant case, the policies in question insure against personal injuries which "arise out of," *inter alia,* the torts of defamation, false imprisonment and invasion of privacy. "[C]onstrued strictly against the insurer, 'arising out of' means causally connected with, not proximately caused by." *Erie Ins. Exchange v. Eisenhuth,* 305 Pa.Super. 571, 574, 451 A.2d 1024, 1025 (1982) (citing *Manufacturers Casualty Ins. Co. v. Goodville Mutual Casualty Co.,* 403 Pa. 603, 170 A.2d 571 (1961)). The phrase "arising out of," has been equated with "but for" causation. *Id.* Therefore, if the nature of the allegations and claims raised in the underlying complaint filed in the instant matter arise out of the torts enumerated in the policy, those claims would potentially fall under the coverage of the policy and appellees would be under the duty to defend.

Now we turn to the underlying complaint. Nowhere therein does plaintiff employ the words false imprisonment, defamation or invasion of privacy. Nowhere therein does plaintiff specifically assert a claim for anything other than sexual harassment and gender discrimination. The nature of her factual allegations and the nature of her claims, indeed the nature of her entire lawsuit, is based on alleged acts of sexual harassment and gender discrimination. A cursory reading of the complaint supports this finding. Specifically, paragraph three of the underlying complaint states that the derogatory remarks made by plaintiff's coworkers were "based on Ms. Jesiolowska's gender[.]" Similarly, paragraph three characterizes being placed in a cage and metal drum as "harass[ment]."

■ Appellants herein fail the "but for" test necessitated by the terms of the policy. The underlying plaintiff's injuries were not causally connected with individual acts of false imprisonment, defamation or invasion of privacy. Nor were her injuries pled as being the result of those enumerated causes of action. Rather the nature of the factual allegations and claims raised in the complaint clearly plead that plaintiff's injuries were the result of collective instances of sexual harassment and gender discrimination over a period of years. Thus, those injuries are part and parcel of her sexual harassment lawsuit. As previously stated, the actual details of Ms. Jesiolowska's injuries are not dispositive of whether appellees had a duty to defend. Rather, it is the *nature* of the allegations and claims that fixes the determination. Here, because the nature of the allegations and claims raised in the underlying suit consist of injuries resulting from acts of harassment and discrimination, acts not covered by the policies, appellees were under no duty to defend and the court's order granting summary judgment to appellees was proper.

Appellants additionally argue that because the underlying suit originated in federal court, "this court must be cognizant of the distinctions between Pennsylvania practice and procedure and federal practice and procedure with regard to pleading." Appellant argues that Federal Rule of Civil Procedure 8 requires only "notice" pleading wherein the "complaint 'need not identify any particular theory under which relief is sought[,]' *Crull*

*v. GEM Ins. Co.*, 58 F.3d 1386 (9th Cir. 1995)," whereas Pennsylvania Rule of Civil Procedure 1019 requires "fact" pleading, wherein a complaint must give notice of the claim, synopsize the facts essential to support the claim and define the issues raised. *Miketic v. Baron*, 450 Pa.Super. 91, 675 A.2d 324 (1996); *Santiago v. Pennsylvania Nat. Mut. Cas. Co.*, 418 Pa.Super. 178, 613 A.2d 1235 (1992). Appellants argue that we should analyze this case under "the context of the liberal 'notice' pleading requirements of the federal rules." We find appellants argument unavailing because in *Commercial Union Ins. Co. v. Sky, Inc.*, 810 F.Supp. 249 (W.D.Ark.1992), a case with similar factual circumstances and upon which the trial court relied in disposing of the instant summary judgment motions, the Federal District Court for the Western District of Arkansas, found that interrelated and interdependent acts of sexual harassment did not constitute "personal injury" under a commercial general liability policy.

In *Commercial Union, supra*, the policy covered "personal injury" defined as:

> [I]njury, other than 'bodily injury,' arising out of one or more of the following offenses: false arrest, detention or imprisonment; malicious prosecution; wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies; oral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations goods or services; an oral or written publication of material that violates a person's right of privacy.

In holding that the policy did not cover the allegations of sexual harassment contained in the complaint of Kimberly Cluck (the plaintiff in the underlying lawsuit), the federal district court opined:

> Although it is not pled, Kimberly Cluck has made, in her brief, factually unsupported contentions that she was "imprisoned" or "defamed" and that these alleged "personal injuries" require that Commercial defend Sky, Inc. in the sexual harassment litigation. While the court believes that Kimberly Cluck has failed to present evidence that she was imprisoned or defamed, the court does not believe that these claims, even if true, are severable from the sexual harassment claims, requiring that Commercial defend them. To the contrary, each and every allegation made by Kimberly Cluck arises out of the alleged acts of sexual harassment. Her allegations are not mutually exclusive; they are related and interdependant. Without the underlying sexual harassment claim there would have been no alleged "personal injury" and no basis for a suit against Sky, Inc. for imprisonment, defamation, outrage or negligent supervision. It is clear from a mere reading of the complaint that this is not a "slander" or "false imprisonment" lawsuit. In fact those terms are not even used and no facts are pled to support such causes of action. Furthermore, there has not been any notice that Kimberly Cluck intends to pursue such actions. This case has been pled as a Title VII sexual harassment lawsuit and that is what it is.

*Commercial Union, supra*, 810 F.Supp. at 249.

Although the federal district court's opinion is not binding upon this court, we find it instructive in the present matter and conclude that Ms. Jesiolowska's factual allegations, taken as true, cannot be severed from her claims of sexual harassment and gender discrimination.[3] We find that Ms. Jesiolowska's factual allegations, pled in the context of her sexual harassment and gender discrimination lawsuit do not allege "personal injuries" which "arise out of" the tortious offenses enumerated in the policy of insurance. Rather, the nature of her injuries, the nature of her allegations and the nature of her lawsuit sound in sexual harassment and gender discrimination. Therefore, we conclude that Aetna and PMA were under no duty to defend.[4] Accordingly, the order which

---

**3.** Since we find the case neither persuasive nor precedential, we decline appellants' suggestion to rely upon the *holding of an unpublished memorandum decision of the Federal District Court for the Eastern District of Pennsylvania which was* extensively cited to in appellants' brief and discussed at oral argument before this court.

**4.** Since the duty to defend is greater than the duty to indemnify, *Biborosch, supra*, at 509, 603

granted summary judgment to Aetna and PMA is affirmed.

Order affirmed.

A.2d at 1052, and because appellees had no duty to defend the merits of the underlying action, appellees cannot be required to indemnify appellants against the subsequent $150,000 settlement amount.