**CGU INSURANCE, Plaintiff,**

v.

**TYSON ASSOCIATES, Jerald Mirrow, Peter Vakkas, Plaza Furs, Inc., et al., Defendants.**

**Civ. A. No. 99–2505.**

United States District Court, E.D. Pennsylvania.

April 27, 2001.

Michael P. Gould, Mark J. Hill, Mark J. Hill & Associates, PC, Philadelphia, PA, for plaintiff.

William J. Leonard, Mathieu Shapiro, Obermayer, Rebmann, Maxwell & Hippel, LLP, Philadelphia, PA, for Tyson Assoc., Jerald Mirrow, defendants.

Victor M. Snyder, Philadelphia, PA, for Peter Vakkas.

Jerome R. Balka, Philadelphia, PA, pro se.

Tremelle I. Howard, Shelley R. Smith, City Of Philadelphia, Law Dept., Philadelphia, PA, for John Loisch, David Rizzo, Gerard Levins, City Of Philadelphia, defendants.

L. Kristen Blanchard, Swartz, Campbell & Detweiler, Philadelphia, PA, for Larry Schwalb, defendant.

## *MEMORANDUM*

ROBERT F. KELLY, District Judge.

Presently before this Court is the Motion for Summary Judgment filed by the Defendants, Tyson Associates and Jerald Mirrow ("Tyson" and "Mirrow", or collectively "Defendants") and the Cross Motion for Summary Judgment filed by the Plaintiff, CGU Insurance ("CGU"). These Motions concern CGU's duty to defend the Defendants in both federal and state actions arising from the same factual scenario. For the following reasons, the Defendants' Motion for Summary Judgment is granted in part and denied in part and CGU's Cross Motion for Summary Judgment is denied.

## I. *FACTS*

Plaza Furs, Inc. ("Plaza Furs") and Peter Vakkas ("Vakkas"), the principal owner of Plaza Furs, entered into a lease with Tyson on April 15, 1994 for retail space in which to sell furs. Mirrow controls Tyson.[1] As part of the lease arrangement, Tyson perfected a security interest in Plaza Furs' fur inventory. In February, 1997, a dispute arose between the parties over Plaza Furs' alleged failure to pay rent under the lease. While Vakkas was on vacation, and the leased premises was closed, Mirrow sent Vakkas a letter indicating Tyson's intent to enter the premises and seize inventory, pursuant to the terms of the April, 1994 lease and security agreement. Because Vakkas was on vacation, he did not receive the letter. On August 14, 1997, Mirrow, accompanied by others, entered into the leased premises and removed approximately $200,000 to $500,000 worth of furs from the property.

After Vakkas discovered that Mirrow had removed the inventory, he filed an action against Tyson captioned *Plaza Furs Inc. v. Tyson Assoc.*, Court of Common Pleas, Philadelphia County, No. 33197, August Term 1997, seeking the return of the furs and amounts for other damages. Much of the seized inventory had allegedly been on consignment from Grecophilia, a fur dealer from New York, who also filed a suit against Tyson captioned *Grecophilia/The New York Fur Place, Inc., et al. v. Tyson Assoc.*, Court of Common Pleas, Philadelphia County, No. 3589, January Term 1998, (collectively, the "State Court Actions"). The two State Court Actions were eventually joined together.

On September 18, 1998, Vakkas and Plaza Furs also filed a case captioned *Vakkas v. Tyson Assoc.*, No. 98–4981, 2000 WL 325916 (E.D.Pa., Mar.28, 2000) (the "Underlying Action") against, inter alia, Tyson and Mirrow in this Court alleging violation of 42 U.S.C. section 1983 and various state law violations similar to those raised in the State Court Action. CGU provided a defense in the Underlying Action, under a written reservation of rights, pursuant to a commercial general liability insurance policy ("CGL Policy") issued by CGU's predecessor to Mirrow. Tyson and Mirrow then filed Motions for Summary Judgment with this Court. On March 28, 2000, this Court granted Tyson's and Mirrow's Motions for Summary Judgment regarding the 42 U.S.C. section 1983 claim and dismissed Plaintiffs' state law claims without prejudice for lack of jurisdiction. On June 27, 2000, the Court of Common Pleas found in favor of Tyson and against the consolidated plaintiffs in the State Court Actions.

On May 14, 1999, while the Underlying Action was pending, CGU commenced this action seeking declaratory relief that it was not obligated under the CGL Policy to defend Mirrow in the Underlying Action. On October 26, 1999, the Defendants filed their Answer and Counterclaim alleging that CGU had a duty to continue defending Mirrow in the Underlying Action. The Defendants further alleged that CGU also had a duty to defend Tyson in the State Court Actions and was responsible for the expenses incurred by Tyson in defending itself in those actions. On December 14, 2000, the Defendants filed the current Motion for Summary Judgment on CGU's Complaint and on their Counterclaim. On December 29, 2000, CGU filed the present Cross Motion for Summary Judgment on its Complaint and on the Defendants' Counterclaim.

---

**1.** Whether Mirrow is the sole proprietor of Tyson or whether Mirrow is a general partner of Tyson is in dispute. *See* section III.B., *infra*.

## II. STANDARDS

### A. Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is material only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). Further, the non-moving party has the burden of producing evidence to establish prima facie each element of its claim. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. *Id.* at 322, 106 S.Ct. 2548; *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

### B. Duty to Defend

■ Under Pennsylvania law, the Court has the responsibility of interpreting insurance contracts. *Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts and Youngs, P.C.*, 821 F.2d 216, 219 (3d Cir.1987); *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F.Supp.2d 421, 427 (E.D.Pa.1999). Furthermore, ambiguous insurance contract provisions must be construed in favor of the insured, and against the drafter of the contract, the insurer. *Sphere Drake*, 35 F.Supp.2d at 427; *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). However, " 'a court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them.' " *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir.1981)).

■ The insurer has a duty to defend its insured in an action if the factual allegations of the complaint state a claim which could potentially fall within the coverage of the policy. *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 669 (Pa.Super.1997)(citing *Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 603 A.2d 1050, 1052 (1992)). The insurer has a duty to defend even if the complaint is "groundless, false, or fraudulent." *Sphere Drake*, 35 F.Supp.2d at 427 (quoting *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 410 Pa. 55, 188 A.2d 320, 321 (1963)).

In determining whether there is a duty to defend, " 'the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured.' " *Roman Mosaic*, 704 A.2d at 669 (quoting *Biborosch*, 603 A.2d at 1052 (citing *Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 152 A.2d 484 (1959))). Therefore, to determine whether the duty to defend exists, the court must first review the scope of the insurance coverage, and then analyze the factual allegations in the complaint. If the policy could potentially cov-

er the allegations in the complaint, then there is a duty to defend. *CGU v. Travelers Prop. & Cas.*, 121 F.Supp.2d 819, 822 (E.D.Pa.2000); *Roman Mosaic*, 704 A.2d at 669.

The insurer's duty to defend is distinctly separate from its duty to indemnify. *Sphere Drake*, 35 F.Supp.2d at 427 (citing *Erie Ins. Exch. v. Transamerica Ins. Co.*, 516 Pa. 574, 533 A.2d 1363, 1368 (1987)). Furthermore, "[t]he duty to indemnify is more limited than an insurer's duty to defend, and arises only when the insured is determined to be liable for damages within the coverage of the policy." *Id.* (internal quotations omitted); *see Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa.Super.1997)(stating that the duty to defend is more encompassing than the duty to indemnify).

 The insured has the burden of establishing coverage under an insurance policy. *Sphere Drake*, 35 F.Supp.2d at 427; *Erie Ins. Exch.*, 533 A.2d at 1366–67. However, the insurer has the burden of establishing that policy exclusions preclude coverage. *Id.* (citing *Miller v. Boston Ins. Co.*, 420 Pa. 566, 218 A.2d 275, 277 (1966)). Furthermore, policy exclusions are strictly construed against the insurer. *Id.* at 428(citing *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n. 3 (3d Cir.1998)).

## III. *DISCUSSION*

### A. *The Underlying Action (Federal Action)*

In determining whether CGU has a duty to defend Mirrow in the Underlying Action, this Court must first review the scope of the insurance coverage, and then analyze the factual allegations in the com-

plaint. If the policy could potentially cover the allegations in the complaint, then there is a duty to defend. *CGU*, 121 F.Supp.2d at 822; *Roman Mosaic*, 704 A.2d at 669.

### 1. The Scope of the Insurance Coverage

The Defendants claim that CGU has a duty to defend under two types of coverage in the CGL Policy; Coverage A and Coverage B. Because this Court finds that CGU has a duty to defend Mirrow under Coverage B, this Court will not discuss Coverage A.[2] Coverage B, entitled "PERSONAL AND ADVERTISING INJURY LIABILITY" states that CGU "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies. [CGU] will have the right and duty to defend the insured against any 'suit' seeking those damages." (Pl.'s Ex. B, p. 4 of 13, CGL Policy). Coverage B further states that "[t]his insurance applies to: (1)'Personal injury' caused by an offense arising out of your business." (*Id.*) Lastly, in the "DEFINITIONS" section, "personal injury" is defined as "injury other than 'bodily injury' arising out of . . . [t]he wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor." (*Id.*, p. 12 of 13).

### 2. The Factual Allegations in the Complaint

The complaint in the Underlying Action alleges all of the following events: Plaza Furs and Tyson entered into a lease in

---

**2.** Coverage A, entitled "BODILY INJURY AND PROPERTY DAMAGE LIABILITY" states that CGU "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

(Pl.'s Ex. B, p. 1 of 13). Coverage A further states that "[t]his insurance applies to 'bodily injury' and 'property damages' only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence'." (*Id.*)

April, 1994. (Pl.'s Ex. F, ¶ 14). After a dispute regarding rent, Tyson and Plaza Furs reached a settlement and the lease was revised. (*Id.*, ¶ 19). From that point forward, Plaza Furs continuously complied with the revised lease agreement. (*Id.*, ¶ 25). However, "unbeknownst to Plaza and Vakkas, during 1997, Tyson, Mirrow, [and their attorney] ... concocted a plan to oust Plaza from the Premises and to misappropriate fur inventory worth approximately $500,000." (*Id.*, ¶ 26). Mirrow knew that Plaza Furs held inventory on consignment from other furriers. (*Id.*, ¶¶ 16, 31). Mirrow further knew that Vakkas would be away on vacation starting August 1, 1997, (*Id.*, ¶ 14). On August 12, 1997, Mirrow sent a letter to Vakkas, which Mirrow knew Vakkas would not receive, indicating that Tyson would enter the leased premises on August 14, 1997. (*Id.*, ¶¶ 39–41). On August 14, 1997, Mirrow carried out the pre-meditated plan, "which resembled a military raid," to evict Plaza Furs and abscond with the inventory, with the assistance of the Philadelphia police. (*Id.*, ¶ 46). Mirrow's self help action violated the Federal Constitution, Pennsylvania law and Philadelphia police procedures regarding self-help eviction. (*Id.*, ¶ 49). During the eviction, Mirrow removed the fur inventory, much of which was not owned by Plaza but was on consignment, and changed the locks. (*Id.*, ¶ 51). As a result of the eviction, Plaza was forced to file for bankruptcy and subsequently went out of business. (*Id.*, ¶¶ 65–66).

The Complaint in the Underlying Action sets forth eleven counts against the various defendants: (1) violation of 42 U.S.C. section 1983; (2) conversion; (3) intentional trespass; (4) intentional wrongful eviction; (5) intentional wrongful distraint; (6) intentional tortious interference with contractual relations; (7) intentional civil conspiracy; (8) breach of contract (alleged against Tyson only); (9) wrongful care, custody and control of personal property (alleged against defendants other than Tyson and Mirrow); (10) intentional infliction of emotional distress; and (11) negligence.

### 3. Analysis

Coverage B of the CGL policy insures against personal injuries which "arise out of," the torts enumerated in the policy. *Roman Mosaic,* 704 A.2d at 669; *see also O'Brien Energy Sys., Inc. v. Am. Employers' Ins. Co.,* 427 Pa.Super. 456, 629 A.2d 957, 964 (1993)(stating that "the personal injury endorsement extends liability coverage to the specific torts there enumerated."). Under Coverage B, the enumerated torts include wrongful entry, wrongful eviction and invasion of the right of private occupancy. (Pl.'s Ex. B, p. 12 of 13). In *Roman Mosaic,* the court stated that:

" '[C]onstrued strictly against the insurer, "arising out of" means causally connected with, not proximately caused by.' *Erie Ins. Exchange v. Eisenhuth,* 305 Pa.Super. 571, 574, 451 A.2d 1024, 1025 (1982)(citing *Manufacturers Casualty Ins. Co. v. Goodville Mutual Casualty Co.,* 403 Pa. 603, 170 A.2d 571 (1961)). The phrase 'arising out of,' has been equated with 'but for' causation. *Id.* Therefore, if the nature of the allegations and claims raised in the underlying complaint filed in the instant matter arise out of the torts enumerated in the policy, those claims would potentially fall under the coverage of the policy and appellees would be under the duty to defend."

*Roman Mosaic,* 704 A.2d at 669. CGU has a duty to defend Mirrow any time a complaint filed by an injured party potentially comes within the coverage of the CGL Policy. *Transamerica Ins. Co.,* 533 A.2d at 1368. Furthermore, "if some of the allegations in the complaint fall within the terms of coverage and others do not, the insurer is obliged to defend the entire

action against the insured." *Allstate Ins. Co. v. Brown,* 834 F.Supp. 854, 857 (E.D.Pa.1993).

■ In this case, the complaint in the Underlying Action specifically alleges, inter alia, wrongful eviction. Furthermore, the factual allegations in the complaint allege that Tyson and Mirrow wrongfully entered into the leased premises and wrongfully evicted Plaza. *See CGU,* 121 F.Supp.2d at 823 (stating that "the determination of coverage is not based solely on the particular cause of action pleaded, but instead it is necessary to look at the factual allegations contained in the complaint.") It is apparent that the injuries alleged in the complaint arose out of the acts of entering into the leased premises, taking the inventory, and changing the locks. Since wrongful entry and wrongful eviction are specifically enumerated in Coverage B of the CGL Policy, CGU has a duty to defend Mirrow in the Underlying Action.

CGU states that in Coverage B, there is an exclusion which states that "[t]his insurance does not apply to [ ] '[p]ersonal injury ... [a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured.'" (Pl.'s Ex. B, p. 5 of 13). CGU argues that the above exclusion applies because the complaint in the Underlying Action alleges that the Defendants intentionally entered into the leased premises, took the inventory, and evicted Plaza in violation of the Federal Constitution and Pennsylvania laws. As stated above, the insurer has the burden of establishing that policy exclusions preclude coverage. *Sphere Drake,* 35 F.Supp.2d at 427 (citing *Miller,* 218 A.2d at 277). Furthermore, policy exclusions are strictly construed against the insurer. *Id.* at 428 (citing *Selko,* 139 F.3d 146 at 152 n. 3 (3d Cir.1998)). An insurance contract must be construed according to the plain meaning of its terms and ambiguous provisions must be construed

against the insurer. *Sphere Drake,* 35 F.Supp.2d at 427.

Here, the Defendants were never convicted of, nor charged with, any crimes or violations of any laws. In fact, in the State Court Actions, the court specifically found that Tyson had "lawfully sold the furs of the lessee after distraining them" and that "[n]o conduct was undertaken by Tyson that was violative of Plaza Furs' rights under the Uniform Commercial Code. Pursuant to the Uniform Commercial Code, as codified at 13 Pa.C.S.A. Sec. 9503, a secured party may repossess collateral after default without judicial process." *Plaza Furs, Inc. v. Tyson Assoc./Grecophilia/The New York Fur Place, Inc. et al. v. Tyson Assoc.,* Court of Common Pleas, Philadelphia County, Nos. 3197, 3589, ¶¶ 8, 13. The Defendants have not willfully violated a penal statute or ordinance, nor have they been found liable for any torts. After reading the exclusion according to its plain meaning and strictly construing it against CGU, this Court is unable to find that the proffered exclusion applies in this situation. *Selko,* 139 F.3d 146, 152 n. 3.

■ Similarly, CGU also argues that public policy precludes coverage for willful criminal acts or for any intentional torts, regardless of the language of the policy, and thus, they have no duty to defend the Defendants. *See State Farm Mut. Auto. Ins. Co. v. Martin,* 442 Pa.Super. 442, 660 A.2d 66 (1995); *Germantown Ins. Co. v. Martin,* 407 Pa.Super. 326, 595 A.2d 1172 (1991). However, this issue is not appropriately considered during the duty to defend analysis. *Home Ins. Co. v. Perlberger,* 900 F.Supp. 768, 771. Furthermore, as stated above, the Defendants have not been found guilty of any wrongdoing either criminally or civilly.

In *Nationwide Mutual Insurance Co. v. Sedicum,* NO. 93–2996, 1993 WL 544414 (E.D.Pa. Dec 27, 1993), while claiming that

it had no duty to defend, the insurer argued that it was against public policy to insure against the commission of a crime. The court noted that whether the insured's conduct was criminal had not been determined and held that the public policy issue did not pertain to the obligation to defend, but rather to the obligation to indemnify. *Id.* The court further held that the issue was unripe and granted the insured's motion for a judgment declaring that the insurer had a duty to defend. *Id.* at *3.

Likewise, in *Home Insurance Co.*, the court found that the insurer's public policy argument against insuring intentional acts was only relevant towards its duty to indemnify and not its duty to defend. The court further stated that "as to [the insurer's] assertion that insurance for intentional acts is contrary to public policy, the court assumes that [the insurer] does not intend for this argument to apply to [its] duty to defend its insureds, only to its duty to indemnify them, the usual context in which such 'public policy' arguments are made". *Home Ins. Co.*, 900 F.Supp. at 771.

■ Lastly, CGU argues that there is there is an implicit fortuity requirement read into every liability policy. *Compagnie Des Bauxites De Guinee v. Ins. Co. of N. Am.*, 554 F.Supp. 1080, 1084 (W.D.Pa. 1983), *rev'd on other grounds*, 724 F.2d 369, 372 (3rd Cir.1983). Therefore, CGU argues that because the complaint in the Underlying Action alleges that the Defendants' acts and the results of their acts were intentional and not fortuitous, CGU does not have a duty to defend Mirrow. The Defendants argue that their intent is irrelevant in the analysis under Coverage B because Coverage B does not require that the injury be caused by an occurrence, which Coverage A does require.[3]

An occurrence has been described as an accident or a fortuitous event. *See Compagnie des Bauxites de Guinee v. Ins. Co. of N. Am.*, 724 F.2d 369, 372 (3rd Cir. 1983). In 2 Insurance Claims and Disputes 3d, section 11:28, Professor Windt states that:

In the vast majority of policies, coverage for personal injury (and advertising injury)is not conditioned on there having been an occurrence. In those that do attempt so to condition the coverage, the courts are split as to whether the requirement for an occurrence, that the injury be expected or intended by the insured, is inconsistent with the nature of personal injury/advertising injury coverage, thereby making the occurrence requirement unenforceable.

A. Windt, 2 Insurance Claims and Disputes 3d § 11:28 (1995). Professor Windt also states that if the personal injury coverage does require an occurrence, then "[t]he offenses listed in the definitions of personal injury/advertising injury cannot be reconciled with the requirement that there be an accident." *Id.* Coverage B is not conditioned on there having been an occurrence. Therefore, under Professor Windt's analysis, this Court need not be concerned with whether the injury was expected or intended by the Defendants. Nor is it necessary for this Court to address whether the occurrence requirement is inconsistent with Coverage B, because no such requirement is present.

Coverage B specifically provides coverage for injuries arising out of "wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor." (Pl.'s Ex. B, p. 12 of 13). The plain meaning of the terms guides this Court in finding that CGU has

---

**3.** See section III.A.1., at 8, n. 2, *supra,* for an explanation of Coverage A.

a duty to defend against suits alleging injuries arising from these intentional torts; the results of which the plaintiff would almost always allege were intended by the defendant. *St. Paul Fire and Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1437 (3rd Cir.1991)(stating that unambiguous terms in an insurance contract are to be given their "plain and ordinary meaning.") To hold otherwise would nearly nullify the protection afforded by Coverage B. The complaint in the Underlying Action alleges injuries from, inter alia, those torts enumerated in Coverage B. Therefore, CGU has a duty to defend Mirrow in the Underlying Action. At the very least, there is an ambiguity within the policy language which must be interpreted against CGU. *St. Paul Fire and Marine Ins. Co.*, 935 F.2d at 1437.

## B. *The State Court Actions*

■ The Defendants also ask this Court to grant them summary judgment on their Counterclaim against CGU. The Counterclaim alleges that CGU had a duty to defend the Defendants in the State Court Actions under the CGL Policy and seeks reimbursement from CGU for defense costs in those actions. CGU has filed a Cross Motion for Summary Judgment on this issue. Both Motions for Summary Judgment on this issue must be denied because genuine issues of material fact remain regarding whether CGU had a duty to defend the Defendants in the State Court Actions.

The CGL Policy lists "JERROLD MIRROW" as the named insured and the form of business as "INDIVIDUAL". (Pl.'s Ex. B, p. 1 of 3). Under the heading "WHO IS COVERED", the CGL Policy states that if the named insured is listed as an individual, then "[the named insured] and the [named insured's] spouse are insureds but only with respect to the conduct of a business of which [the named insured is] the sole owner." (*Id.*, p. 7 of 13). Fur-

thermore, the CGL Policy states that "no person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." (*Id.*, p. 8 of 13). The State Court Actions list only Tyson as a defendant, and not Mirrow. Therefore, CGU would only be required to defend Tyson under the CGL policy if Tyson was solely owned by Mirrow. However, in the Defendants' Answer and Counterclaim, they state: "[i]t is admitted only that Tyson Associates was a limited Partnership" (Def.'s Answer, ¶ 4); "[i]t is admitted only that the defendant Mirrow was a general partner of Tyson Associates" (*Id.*, ¶ 6); "Tyson Associates, was a limited partnership" (Def.'s Counterclaim, ¶ 4); and "[a]t all times applicable hereto Mirrow was a general partner of Tyson Associates" (*Id.*, ¶ 5).

In its Cross–Motion for Summary Judgment, CGU claims that it is entitled to summary judgment regarding the duty to defend in the State Court Actions because Tyson is not an insured under the CGL Policy and Mirrow, the named insured, is not a party in the State Court Actions. The Defendants, in their Reply, do not explain the statements made in their Answer and Counterclaim. However, the Defendants do state in their Reply that "To be clear: Tyson is a sole proprietorship owned by Mirrow." (Def.'s Reply, at 2). The Defendants attempt to bolster their argument with Mirrow's affidavit which states that, "[a]t all times applicable to the Complaint, I was the owner of Tyson Associates." (Def's Ex. D, ¶ 1). The Defendants further state that "[i]n the past, Mirrow had a partner, and Tyson was a limited partnership. The partnership ceased to exist, however, several years before the Policy year in question. At that point, Tyson became a sole proprietorship." (Def.s' Reply, at 2, n. 1). This

statement is in direct conflict with the Defendants' statement in their Counterclaim that "[a]t all times applicable hereto Mirrow was a general partner of Tyson Associates" (Def.s' Counterclaim, ¶ 5). None of the parties provide any other proof regarding the status of Tyson during the period in question. Because the Defendants' pleadings are in direct conflict and neither party has provided proof on this issue, there is a genuine issue of material fact concerning this issue. Furthermore, there are also factual issues concerning whether the Defendants' notice to CGU of the State Court Actions was timely and sufficient. Therefore, summary judgment on this issue for either party is inappropriate.

## IV. *CONCLUSION*

After analyzing the scope of Coverage B in the CGL Policy, it is evident that the factual allegations of the complaint in the Underlying Action state a claim which could potentially fall within Coverage B. Therefore, CGU has a duty to continue defending the Defendants in the Underlying Action and summary judgment in favor of the Defendants on CGU's Complaint is appropriate. However, genuine issues of material fact remain regarding the Defendants' Counterclaim concerning whether CGU must reimburse Tyson for the expenses it incurred in defending itself in the State Court Actions. Therefore it is inappropriate to grant either the Defendants' Motion for Summary Judgment or CGU's Cross–Motion for Summary Judgment on that issue.

An appropriate Order follows.

### *ORDER*

AND NOW, this 27th day of April, 2001 upon consideration of the Motion for Summary Judgment filed by the Defendants, Tyson Associates and Jerald Mirrow (Dkt. No. 45), and the Cross–Motion for Summary Judgement filed by Plaintiff, CGU Insurance (Dkt. No. 47), and any Responses and Replies thereto, it is hereby ORDERED that the Defendants' Motion is GRANTED IN PART and DENIED IN PART and Plaintiff's Motion is DENIED. It is further ORDERED that on Plaintiff's Complaint, judgment is entered in favor of the Defendants and the Plaintiff is required to continue to provide a defense in *Vakkas v. Tyson Associates*, No. 98–4981, 2000 WL 325916 (E.D.Pa., Mar.28, 2000).