**NATIONWIDE MUTUAL
FIRE CO., Plaintiff,**

**v.**

**Celeste A. SHANK, t/d/b/a Celeste Shank's Daycare, Stephen S. Shank, Candice Shank, Stephen Wenger, a minor, by and through Jerry L. Wenger and Joyce E. Wenger, his parents and natural guardians, Jerry L. Wenger, and Joyce E. Wenger, Defendants.**

**Civil Action No. 96–5574.**

United States District Court,
E.D. Pennsylvania.

Jan. 16, 1997.

Mark Alan Raith, Reading, PA, for plaintiff.

Michael D. Bull, Lancaster, PA, for Shank defendants.

Gabriella Hashem Farhat, Lancaster, PA, for Wenger defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

On August 12, 1996 the plaintiff, Nationwide Mutual Fire Insurance Company ("Nationwide"), filed a declaratory judgment action in this court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., seeking a declaration that it is not under any duty to defend, indemnify or otherwise provide coverage to any of the named defendants in connection with another lawsuit. That lawsuit, listed as *Wenger v. Shank*, Civil Action Number 1856–96, is presently pending before the Court of Common Pleas of Lancaster County, Pennsylvania. The state court suit alleges that Candice Shank, the minor daughter of Celeste and Steven Shank, sexually molested Stephen Wenger, the minor son of Jerry and Joyce Wenger, while Stephen Wenger was entrusted to the care of Celeste Shank's Daycare, a babysitting business operated by Celeste and Stephen Shank and/or while babysitted by Candice Shank. Apparently, Celeste and Stephen Shank, defendants in both actions, are insured by plaintiff Nationwide; Nationwide now seeks a determination of the extent to which they must be involved in the state action.

Nationwide brought the instant Motion for Summary Judgment on November 14, 1996 pursuant to Rule 56 of the Federal Rules of Civil Procedure. On December 23, 1996 we issued an order that we would treat the December 6, 1996 response of defendants Jerry, Joyce and Stephen Wenger as a Motion to Dismiss, or for a Stay, or for Summary Judgment in their favor pursuant to *Terra Nova Insurance Co. v. 900 Bar*, 887 F.2d 1213 (3d Cir.1989), and directed plaintiff

Nationwide to respond. Having received Nationwide's response, cursory though it may be, we now proceed to the issues at hand. We note that defendants Celeste Shank, Celeste Shank's Daycare, Stephen Shank and Candice Shank finally responded to Nationwide's declaratory judgment action on January 6, 1997, and as a default judgment was not entered against them, we will include them in the present discussion of whether to stay or dismiss the instant action in light of the state suit below.

We have jurisdiction in this matter due to the diversity of citizenship of the parties, and the amount in controversy, which exceeds $50,000.00. Venue is proper under 28 U.S.C. § 1391(a), in that the events giving rise to the claim asserted by Nationwide arose in the County of Lancaster, in the Commonwealth of Pennsylvania, which is included within the Eastern District of Pennsylvania.

### II. DISCUSSION

#### A. Declaratory Judgment Actions

Before we reach the substantive issues behind the duty to defend or the duty to indemnify, we must first discuss the nature of declaratory judgment actions. It is not uncommon for insurers to bring this type of suit to determine their obligations per another lawsuit between one of their insureds and a third party. It is a search for certainty. However, because the suit is almost necessarily prefaced on a similar lawsuit in state court, it behooves us to tread lightly.

Even if a suit under the Declaratory Judgment Act ("Act") otherwise satisfies jurisdictional requirements, we have "discretion in determining whether and when to entertain an action" therein. *Wilton v. Seven Falls Company*, —— U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). In *Wilton*, the Supreme Court held that the distinct features of the Act confer upon federal courts greater discretion to hear or not hear a particular action thereunder than is available under the *Colorado River* or *Moses H. Cone* line of cases, and it is therefore distinguishable from other areas of law where the discretion to hear a case is more limited. As

the court in *Wilton* said, "there is nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action." *Wilton*, at ——, 115 S.Ct. at 2143. Moreover, we can stay or dismiss an action at any time. *Id.*

Consequently, the *Wilton* court held that when a case is brought pursuant to the Act, as this one is, the court should follow the methodology set out in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). That is, we should consider whether the issues being decided in the state court are similar enough such that we would be "indulging in gratuitous interference" were we to allow the federal matter to proceed. *Wilton*, at ——, 115 S.Ct. at 2141.

The Third Circuit, in *Terra Nova Insurance Co. v. 900 Bar*, 887 F.2d 1213 (3d Cir. 1989), anticipated the Supreme Court's opinion. In this case, which is more factually similar than *Wilton*, an insurer brought an action in federal court under the Act to determine its duty to defend and to indemnify an insured in an underlying state case where it was conceivable that the action committed fell within the exclusions of the insurance policy. The court held that it was appropriate to follow the *Brillhart* factors, and examined the issue specifically for insurance cases. Citing Professor Moore, the *Terra Nova* court said that:

> In insurance cases, as in declaratory judgments in general, although both justiciability and federal jurisdiction are present, the court in a proper case may, nevertheless, refuse to proceed with the declaratory action for it is well settled that the exercise of jurisdiction in this area is discretionary.... And frequent, attempted abuses of the declaratory action in this area make the exercise of judicial discretion particularly important.

*Terra Nova*, 887 F.2d at 1225 (*citing* 6A J. Moore, J. Lucas & G. Girtheer, Jr. Moore's Federal Practice ¶ 57.19, at 57-206-07).

The Third Circuit continued, noting that in addition to the *Brillhart* factors of similarity in state law issues, the court should consider "(1) the likelihood that the declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of the obligation; and (4) the availability and relative convenience of other remedies." *Terra Nova*, 887 F.2d at 1224 (*citing Interdynamics, Inc. v. Wolf*, 698 F.2d 157, 167 (3d Cir. 1982)).

However, in a case such as the instant one, there is an additional concern that the declaratory judgment action should not be used as a "race for res judicata" or collateral estoppel. *Terra Nova*, 887 F.2d at 1224. Certainly, there is a serious potential problem if the "same factual question lies at the heart of both an insurance coverage dispute and the underlying tort action." *Id.* Discussing a similar case, the Third Circuit said:

> All parties to the state court suit being present in this action, the insured could well be collaterally estopped from relitigating the issue of intent in the subsequent state court trial. He would thus be subjected to both tort liability and the possibility of punitive damages, all because of the facts established against him in this court by the insurer. Yet the superior resources and expertise of the insurance company in litigating these matters are one aspect of the protection an insured purchases with his policy. Here, the policy language was sufficiently clear to preclude any reasonable expectation of a defense to claims for damages caused intentionally.[1] At the same time, the insured could not possibly have anticipated that the very resources for which he bargained would be turned against him and used to establish his liability whenever intentional tort was alleged. An early declaratory judgment in these circumstances would serve as a procedural mechanism to defeat the reasonable expectations of the insured, which state courts have so zealously guarded through contract interpretation.

---

1. Of course, because the court was discussing a case involving California law, the issue of the duty to defend is different. In Pennsylvania, as will be discussed below, the duty to defend is well set out. However, this difference does not diminish the point the court made.

*Terra Nova*, 887 F.2d at 1225 (*citing Allstate Insurance Co. v. Harris*, 445 F.Supp. 847, 851 (N.D.Cal.1978)). It is under this framework that we will discuss the duty to defend and the duty to indemnify.

### B. The Duty To Defend

Nationwide seeks a declaratory judgment that it is not bound to defend the Shanks in their state court suit. Central to their claim is the Shanks' Homeowner's Insurance policy. This policy, described as the "Nationwide Insurance Elite II Homeowners Policy" states that Nationwide "will provide a defense at [their] expense by counsel of [their] choice" in a liability suit of the insured. Following this general statement is a series of exclusions. Nationwide points to Section II (Exclusions), ¶ 1(b), which excludes from coverage that liability "arising out of business pursuits of an insured." In the easy-to-read style of many such documents, there are then exceptions to the exclusions, including when the liability was incurred during the "occasional or part time self-employed business pursuits of an insured under 19 years old (age 23 if a full-time student)." Nationwide more forcefully points to ¶ 1(a), which excludes liability "which is expected or intended by the insured."

 Under Pennsylvania law, an insurer has a clear duty to defend "if the complaint filed against the insured avers facts which would support a recovery that is covered by the policy." *Terra Nova*, 887 F.2d at 1226 (*citing Erie Insurance Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 583, 533 A.2d 1363, 1368 (1987)); *Cadwallader v. New Amsterdam*, 396 Pa. 582, 152 A.2d 484 (1959). Therefore, if the underlying state case alleges claims which would not fall under an exclusion, specifically the business and "intentional tort" exclusions, Nationwide must defend the Shanks. Moreover, "an insurer is required to defend the entire claim if some of the allegations in the complaint fall within the terms of coverage and others do not." *Home Insurance Co. v. Perlberger*, 900 F.Supp. 768, 771 (E.D.Pa.1995) (*citing Safeguard Scientifics, Inc. v. Liberty Mutual Insurance Co.*, 766 F.Supp. 324, 329 (E.D.Pa. 1991)). Therefore, we need only identify one claim in the underlying complaint which could be covered by the insurance policy to find that Nationwide has a subsequent duty to defend the Shanks.

 An examination of the complaint in the state court suit reveals that the Wengers have alleged five counts of wrongdoing: Count 1 alleges that Celeste Shank, owner of a daycare center in her home, negligently breached her duty to exercise reasonable care and due diligence as relates to the Wengers' son Stephen; Count II alleges that the Shanks negligently breached their duty of care by failing to protect Stephen Wenger from "known or foreseeable dangerous conditions of the premises"; Count III alleges that the Shanks' minor daughter, Candice, intentionally sexually molested Stephen Wenger; Count IV alleges that Candice's parents are liable for the willful conduct of their daughter; and Count V alleges that Candice Shank negligently breached her duty to exercise reasonable care and due diligence as relates to her babysitting of Stephen Wenger. Complaint of *Wenger v. Shank*, Civil Action No. 1856–96, Court of Common Pleas of Lancaster County, PA at 2–10. Despite Nationwide's protestations to the contrary, Counts II and V concern neither intentional acts nor adult business pursuits in the home (nor any other exclusion) and therefore fall within the provisions of the policy.

The Wengers have therefore alleged facts which would support a recovery that is covered by the Shank's Nationwide homeowner's insurance policy. Ergo, Nationwide clearly has a duty to defend the Shanks at this time. This part of the declaratory judgment action will as a consequence be dismissed.

### C. The Duty To Indemnify

 Nationwide may, however, continue to represent the Shanks under a reservation of rights to preserve its ability to contest the duty to indemnify if its defense is ultimately unsuccessful. Certainly, the duty to indemnify presents a different issue. For insurance cases of this sort, the duty to defend must to a certain extent be decided before the beginning of the underlying case for obvious reasons. Conversely, the duty to indemnify need not, and sometimes should not be,

be determined until the state court has evaluated the facts. *See Youngman v. CNA Insurance Co.*, 401 Pa.Super. 381, 386, 585 A.2d 511, 514 (1991). Because that factual determination has not yet been made in this case and is central to our discussion of indemnification, Nationwide's request for declaratory judgment on the duty to indemnify raises serious questions of collateral estoppel. It is a situation wherein our discretion to stay our hearing of a case under *Wilton* and *Terra Nova* is specifically merited.

In its Amended Reply Brief in Support of the Motion for Summary Judgment, Nationwide contends that because intent to harm can be inferred from the act of sexual molestation of a child, the underlying state claim against the Shanks falls squarely within the insurance policy's "intentional acts" exclusion, and Nationwide should therefore not be required to indemnify the defendants. Nationwide points repeatedly to two cases: *Foremost Insurance Co. v. Weetman*, 726 F.Supp. 618 (W.D.Pa.1989), *aff'd without opinion*, 904 F.2d 694 (3d Cir.1990), and *Wiley v. State Farm Fire & Casualty Co.*, 995 F.2d 457 (3d Cir.1993). Both cases hold specifically that "intent to cause harm, within [the] meaning of intentional injury exclusion in homeowner's policy, could be inferred, under Pennsylvania law, from acts of sexual abuse of children committed by insured." *Foremost*, 726 F.Supp. at 619; *see also Wiley*, 995 F.2d at 464. However, *Foremost*, a District Court case in another jurisdiction, fails to discuss the possibility of binding the state court by collateral estoppel without adequate review of the underlying facts. In *Wiley*, the suit for declaratory judgment came subsequent to the insured pleading guilty to sexually assaulting the underlying plaintiff; the issue of collateral estoppel was moot.

The Third Circuit did discuss this issue in *Terra Nova*, noting that "the potential duty to indemnify precludes a declaratory judgment at this time [pre-state trial] that it has no duty to indemnify." *Terra Nova*, 887 F.2d at 1228. In a similar case, the Third Circuit advocated staying any decision on the duty to indemnify and said that "the duty to defend carries with it the conditional obligation to indemnify until it becomes clear that there can be no recovery within the insuring clause." *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 766 (3d Cir.1985). Collateral estoppel, or issue preclusion, occurs under Pennsylvania law when there has been a final adjudication of an issue on the merits by a court of competent jurisdiction. *See Commonwealth of Pennsylvania, Department of Environmental Protection v. Fiore*, 682 A.2d 860, 862 (Pa.Cmwlth.1996). Summary judgment prefaced on a judicial decision that an act was intentional, or even that an act occurred, would absolutely be such a final determination. Consequently, without a decision on the underlying facts by the state court, it is premature for us to make a determination now as to whether or not intent existed so that indemnification would not be appropriate under the insurance policy.

This last point cannot be overemphasized. We do not have before us any facts or evidence of the sexual assault alleged in the underlying state case. Certainly, the Shank defendants have not pled guilty to criminal charges, and have not admitted nor been found responsible for any civil wrongdoing. If we were to infer intent in the instant case based solely upon the allegation of sexual assault, we would effectively relieve the Wengers, the plaintiffs in the underlying suit, from their burden of proving intentional sexual assault. Such a ruling would by its very nature conclude that Nationwide need not provide a defense to the Shanks because the intentional sexual abuse which occurred in their home fell outside the provisions of their policy. We would collaterally estop another determination on whether the act occurred, and whether it was intentional without any review of the facts.[2] It would simply be irresponsible for us to take this step before the state court has been able to decide the issue itself based upon the evidence before it. Of course, because it is also conceivable that we could at this point find conclusively that the alleged actions are covered by the policy because they were not intentional, or did not

2. We note that by the cross motions for summary judgment, all parties are disclaiming any interest in reviewing the facts beyond the complaint in the underlying state case.

occur, to the detriment of the Wengers in the underlying suit, it is clear that any action by us at this point would overly prejudice one of the litigants in the state case. *See Home Insurance*, 900 F.Supp. at 774.

Accordingly, we will exercise our discretion to stay the "duty to indemnify" part of the declaratory judgment action until such time that the state court has decided the underlying facts sufficiently for us to conclude that the Shanks' actions were included or excluded from coverage by their homeowner's policy.

## III. CONCLUSION

For the foregoing reasons, we will dismiss the Plaintiff's declaratory judgment action so far as it relates to it's duty to defend the Shank Defendants. Plaintiff must defend the Shank Defendants in the underlying state suit; however, it may continue to do so under a reservation of rights. We will stay our decision on the balance of Plaintiff's Motion for Summary Judgment on the duty to indemnify until the Court of Common Pleas of Lancaster County, Pennsylvania has come to a final judgment in the matter of *Wenger v. Shank*.

An appropriate order follows.

### *ORDER*

AND NOW, this 16th day of January, 1997, upon consideration of plaintiff Nationwide's Complaint for Declaratory Judgment filed on August 12, 1996, plaintiff Nationwide's Motion for Summary Judgment filed on November 14, 1996, defendants Jerry Wenger, Joyce Wenger and Stephen Wenger's response thereto filed on December 6, 1996, plaintiff Nationwide's reply thereto filed on December 12, 1996, plaintiff Nationwide's Amended Reply filed on January 6, 1997, and defendants Celeste Shank, Celeste Shank's Daycare, Steven Shank and Candice Shank's answer to Nationwide's Complaint for Declaratory Judgment filed on January 6, 1997, it is hereby ordered, consistent with the foregoing opinion as follows:

1. Plaintiff's Complaint for Declaratory Judgment is DISMISSED so far as it relates to a duty to defend;

2. Plaintiff Nationwide is bound by its insurance policy to defend the Shank defendants in the underlying state court suit;

3. The balance of Plaintiff's Complaint for Declaratory Judgment and Motion for Summary Judgment as it relates to a duty to indemnify is STAYED until such time as final judgment is entered in the underlying state court suit;

4. Upon the entrance of final judgment in the underlying state court suit, plaintiff Nationwide shall so inform the court, whereupon renewed motions for summary judgment will be received and considered on the merits.