**SPHERE DRAKE, P.L.C., Plaintiff,**

v.

**101 VARIETY, INC., et al., Defendants.**

**No. Civ.A. 98–1139.**

United States District Court,
E.D. Pennsylvania.

Jan. 29, 1999.

Jay E. Mintzer, Edelstein, Mintzer, Diamond & Sarowitz, Philadelphia, PA, for Plaintiff.

Alan L. Yatvin, Popper and Yatvin, Philadelphia, PA, Jeffrey M. Scott, City of Phila.—Law Dept., Philadelphia, PA, for Defendants.

### MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION

Plaintiff, Sphere Drake, P.L.C. ("Drake"), filed the instant declaratory judgment action against defendants 101 Variety, Inc., Papa Doc's Lounge, Inc. t/a Papa Doc's Lounge, and Randolf Hopson, individually and t/a Papa Doc's Lounge (collectively the "Named Insureds"). Plaintiff also named as defendants 52–Rose, Inc. t/a Stu's Bar & Lounge, Carol Hawkins, individually and t/a Stu's Bar & Lounge (collectively the "Stu's defendants"), the City of Philadelphia, Lonnie Hamilton ("Hamilton"), individually and as a police officer for the Philadelphia Police Department, Benjamin Frazier ("Frazier"), individually and as a police officer for the Philadelphia Police Department, and Shirley Clark ("Clark"), in her own right and as Administratrix of the estate of Douglas

McCuff ("McCuff"), deceased. Plaintiff seeks declaratory relief regarding its duty to defend and indemnify the Named Insureds in a state court lawsuit filed by Clark and McCuff.[1] The Court notes that because the Named Insureds subsequently assigned all of their rights, claims, and causes of action, including the right to defend declaratory judgment actions, to Clark and the estate of McCuff, for the purposes of this action, Clark and McCuff stand in the shoes of the Named Insureds. Therefore, for ease of reference, Clark and McCuff, as assignees of the Named Insureds, hereinafter are collectively referred to as the "Insureds" or "defendants."

Before the Court is defendants' motion to dismiss plaintiff's declaratory judgment complaint pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, motion for summary judgment pursuant to Fed.R.Civ.P. 56(c). In response, plaintiff has filed a cross-motion for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c). For the reasons stated below, the Court will grant defendants' motion for summary judgment,[2] and will deny plaintiff's cross-motion for judgment on the pleadings.

## II. BACKGROUND

On March 14, 1994, Shirley Clark and Douglas McCuff filed a civil action in the Philadelphia Court of Common Pleas against the Named Insureds, the Stu's defendants, the City of Philadelphia, Hamilton, individually and as a police officer for the Philadelphia Police Department, and Frazier, individually and as a police officer for the Philadelphia Police Department. Clark and McCuff sought compensation for the March 20, 1992 shooting that occurred in Papa Doc's Lounge and resulted in physical injury to both Clark and McCuff.

In the underlying state court complaint, Clark and McCuff alleged that on the night of March 20, 1992, Hamilton, an off-duty police officer, drank to the point of visible intoxication at Stu's Bar & Lounge ("Stu's").

---

1. Douglas McCuff died on August 28, 1997.

2. Since the facts set forth above are uncontested by the parties, the Court will treat defendants' motion as a motion for summary judgment.

Hamilton allegedly left Stu's and arrived at Papa Doc's Lounge ("Papa Doc's"), where employees continued to serve alcoholic beverages to an already intoxicated Hamilton. Thereafter, Clark and McCuff arrived at Papa Doc's and sat at the rear of the lounge. While inside Papa Doc's, Hamilton got into a physical altercation with another patron, and during such altercation, Hamilton discharged his firearm, shooting the other patron. Clark and McCuff, along with Papa Doc's employees and other patrons, ran into the kitchen and attempted to exit through a rear door, but were unsuccessful because the door was locked with a padlock. In the meantime, a call was made to the police, and Frazier was among the officers who responded. Frazier entered Papa Doc's and fired five (5) shots, two (2) of which struck Hamilton, and the remaining three (3) bullets flew toward the rear of the lounge. Simultaneously, Clark and McCuff, thinking the situation was under control, exited the kitchen and were returning to the bar when one of the stray bullets shot by Frazier hit McCuff in the abdomen, exited his body, and then hit Clark in the stomach. As a result of the shooting, Clark was hospitalized for eight (8) days, and McCuff for six (6) days.

Based on the above allegations, Clark and McCuff brought an action in the state court asserting: (1) federal civil rights claim against Hamilton, Frazier, and the City of Philadelphia; (2) assault and battery against Hamilton and Frazier; (3) infliction of emotional distress against the Stu's defendants, the Named Insureds, Hamilton, and Frazier; (4) negligence, gross negligence, and negligence per se against the Stu's defendants and the Named Insureds; (5) premises liability against the Named Insureds; and (6) punitive damages against the Stu's defendants, the Named Insureds, Hamilton, and Frazier.

At the time of the shooting on March 20, 1992, the Named Insureds were listed as the named insureds in a commercial general liability insurance policy (the "Policy") issued by Drake. The Policy contained a limit of liability of $100,000.00 and had effective dates from June 6, 1991 to June 6, 1992. On March 14, 1994, the Named Insureds were served with the complaint filed by Clark and McCuff in the state court. On March 22, 1994, the Named Insureds notified Drake of the claims and sought coverage and a defense under the Policy. *See* Defs.' Mot. for Summ.J., at Ex. A. On April 5, 1994, Drake declined to provide a defense, contending that the assault and battery exclusion, as well as the liquor liability exclusion, precluded coverage for Clark's and McCuff's claims. *See* Defs.' Mot. for Summ.J., at Ex. B.

On February 6, 1998, the Named Insureds advised Drake that the state court non-jury trial was to begin on March 6, 1998 before the Honorable Amanda Cooperman. *See* Defs.' Mot. for Summ.J., at Ex. E. Drake did not provide the Named Insureds a defense nor did it otherwise appear at trial. On March 4, 1998, two (2) days before trial, Drake filed the instant declaratory judgment complaint, but did not seek a stay of the state court action. On April 15, 1998, Judge Cooperman entered findings of fact, conclusions of law, and judgment in favor of Clark, in her own right, and as Administratrix of the estate of McCuff, and against the Named Insureds.[3] *See* Defs.' Mot. for Summ.J., at Ex. G. Specifically, Judge Cooperman found that the shooting of Clark and McCuff was an accident, and not the result of an assault and battery. Judge Cooperman concluded that the Named Insureds' negligence in padlocking the emergency exit was the proximate cause of the injuries to Clark and McCuff because it prevented them from fleeing the dangerous situation inside the bar. On May 13, 1998, the Named Insureds assigned all of their rights, claims, and causes of action, including the right to defend declaratory judgment actions, to Clark and the estate of McCuff. *See* Defs.' Mot. for Summ. J., at Ex. I. Therefore, for purposes of this action, Clark and McCuff stand in the shoes of the Named Insureds. To restate, for ease of reference, the individuals and entities

---

**3.** The total judgment for Shirley Clark, in her own right, against the Named Insureds, including delay damages, was $380,410.29. The total judgment for Shirley Clark, as Administratrix of the estate of McCuff, against the Named Insureds, including delay damages, was $279,723.29. *See* Defs.' Mot. for Summ.J., at Exs. G, H.

named as insureds under the Policy are referred to as the "Named Insureds." On the other hand, Clark and McCuff, as assignees of the Named Insureds, are referred to in this memorandum as the "Insureds" or "defendants."

Drake's instant declaratory judgment complaint asserts three (3) Policy exclusions that preclude coverage of Clark's and McCuff's claims: (1) the liquor liability exclusion; (2) the assault and battery/negligent hiring exclusion; and (3) the punitive damages exclusion endorsement. Neither the liquor liability exclusion nor the punitive damages exclusion is implicated at this time since Clark and McCuff did not rely for their claims in the state court on the Named Insureds' conduct in serving liquor to Hamilton after Hamilton had been visibly intoxicated, and no punitive damages were awarded by the state court. The sole issue, therefore, is the applicability of the assault and battery exclusion.

The Insureds have moved for summary judgment, asserting that: (1) Drake's declaratory judgment action is untimely and the Court should refuse to exercise jurisdiction; (2) Drake failed to attach the entire Policy to its complaint, which allegedly is a fatal defect; and (3) Clark's and McCuff's claims are not precluded by the assault and battery exclusion because the state court judge specifically found that the shooting was an accident, and not an assault and battery.[4] Therefore, according to the Insureds, Drake has a duty to defend and indemnify the Named Insureds against the claims of Clark and McCuff. In answer to the Insureds' motion, Drake filed a cross-motion for judgment on the pleadings, reasserting its position that the assault and battery exclusion is clear, unambiguous, and precludes coverage of Clark's and McCuff's claims, and, there-

fore, Drake has no duty to defend and indemnify.

## III. LEGAL STANDARDS

### A. *Summary Judgment Pursuant to Fed.R.Civ.P. 56(c).*

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[5]

---

4. As the Court is granting the Insureds' motion for summary judgment, it is not necessary for the Court to address whether Drake's declaratory judgment complaint was timely or whether Drake's failure to attach the entire Policy to the declaratory judgment complaint is a fatal defect that prevents the Court from deciding this matter.

5. The Court finds that it is not necessary to address the legal standard for adjudicating

Drake's cross-motion for judgment on the pleadings because such motion is procedurally defective. Pursuant to Fed.R.Civ.P. 12(c), the pleadings must be closed before the Court can consider such a motion. The Insureds have not yet filed answers to the complaint, therefore, the pleadings are not closed, and any substantive adjudication on Drake's cross-motion would be premature.

## B. Review of Insurance Contracts Under Pennsylvania Law.[6]

Under Pennsylvania law, it is the province of the Court to interpret contracts of insurance. *Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts and Youngs, P.C.*, 821 F.2d 216, 219 (3d Cir.1987). The primary consideration in interpreting an insurance contract is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa.1983). In doing so, "an insurance policy must be read as a whole [by the court] and construed according to the plain meaning of its terms." *C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir. 1981); *see also Koval v. Liberty Mut. Ins. Co.*, 366 Pa.Super. 415, 531 A.2d 487, 489 (Pa.Super.1987) ("[The court] must construe a contract of insurance as a whole and not in discrete units."). Where a provision of a contract of insurance is ambiguous, the provision must be construed in favor of the insured, and against the insurer, the drafter of the contract. *Standard Venetian Blind Co.*, 469 A.2d at 566. However, "a court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." *St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir.1981).

An insurer's duty to defend an insured arises "whenever the complaint filed by the injured party may potentially come within the policy's coverage." *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985). The duty to defend is triggered even if the complaint asserting claims against the insured is "groundless, false, or fraudulent." *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 410 Pa. 55, 188 A.2d 320, 321 (1963). In determining whether the complaint asserts a claim against the insured to which the policy potentially applies, the factual allegations of the complaint are controlling. *Id.* at 760; *Humphreys v. Niagara Fire Ins. Co.*, 404 Pa.Super. 347, 590 A.2d 1267, 1271 (1991), *appeal denied*, 528 Pa. 637, 598 A.2d 994 (Pa.1991). If the factual allegations of the complaint, taken as true and construed liberally, state a claim to which the policy potentially applies, the insurer must defend, unless and until it can narrow the claim to a recovery that the policy does not cover. *Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 152 A.2d 484, 488 (Pa.1959); *Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 603 A.2d 1050, 1052 (Pa.Super.1992), *appeal denied*, 532 Pa. 653, 615 A.2d 1310 (Pa.1992). Where a claim may potentially come within the scope of the policy, an insurer's refusal to defend its insured is a decision it makes at its own peril. *Cadwallader*, 152 A.2d at 488. However, the insurer is not required to defend the claim "when it is apparent from the face of the complaint that none of the injuries that are alleged falls within the coverage of the policy." *Britamco Underwriters, Inc. v. O'Hagan*, No. 94–1160, 1994 WL 477551, at *3 (E.D.Pa. Sep.2, 1994), *aff'd*, 60 F.3d 814 (3d Cir.1995). To determine whether a claim may potentially come within the coverage of a policy, the Court must ascertain the scope of the insurance coverage, and then analyze the allegations in the complaint. *Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa.Super. 55, 639 A.2d 1208, 1210 (Pa.Super.1994).

The duty to defend is a distinct obligation separate from an insurer's duty to indemnify. *Erie Ins. Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 533 A.2d 1363, 1368 (Pa.1987). The duty to indemnify is more limited than an insurer's duty to defend, and "arises only when the insured is determined to be liable for damages within the coverage of the policy." *Britamco Underwriters, Inc. v. Logue's Tavern, Inc.*, No. 95–2997, 1995 WL 710570, at *2 (E.D.Pa. Dec.1, 1995). The burden is on the insured to establish coverage under an insurance policy. *Erie Ins. Exchange*, 533 A.2d at 1366–67. The insurer has the burden of showing that policy exclusions preclude coverage. *American States Ins. Co. v. Maryland Cas. Co.*, 427 Pa.Super. 170, 628 A.2d 880, 887 (Pa.Super.1993); *Miller v. Boston Ins. Co.*, 420 Pa. 566, 218 A.2d 275, 277

---

6. The parties do not dispute that Pennsylvania law applies in this case.

(Pa.1966). Exclusions are strictly construed against the insurer. *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n. 3 (3d Cir.1998). However, "[e]xclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import." *Pacific Indem. Co.*, 766 F.2d at 761. Thus, if there is no possibility that any of the underlying claims could fall within the coverage of the policy, then the insurer has no duty to defend and indemnify. *Germantown Ins. Co. v. Martin*, 407 Pa.Super. 326, 595 A.2d 1172 (Pa.Super.1991), *appeal denied*, 531 Pa. 646, 612 A.2d 985 (Pa.1992).

## IV. ANALYSIS

### A. *Duty to Defend.*

In assessing whether Drake has a duty to defend, the Court must first ascertain the scope of the coverage, and then assess whether the factual allegations asserted within the underlying complaint may potentially fall within that scope.

### 1. *Scope of the coverage.*

■ Drake contends that the assault and battery exclusion contained in the Policy precludes coverage of Clark's and McCuff's claims because their claims of injury arose out of an alleged assault and battery caused by Frazier's intentional act of discharging his firearm inside Papa Doc's. The Insureds counter that the shooting was not the result of an assault and battery, but rather was an accident. The exclusion reads as follows:

Assault and Battery/Negligent Hiring Exclusion

Notwithstanding anything contained to the contrary, it is understood and agreed that this policy excludes claims arising out of:

1. Assault and Battery, whether caused by or at the instructions of, or at the direction of or negligence of the insured, his employees, patrons or any cause whatsoever and;

2. Allegations that the insured's negligent acts, errors or omissions in connection with the hiring, retention, supervision or control of employees, agents or representatives caused, contributed to, related to or accounted for the assault and battery.

Pl.'s Ans., at Ex. A. Giving the assault and battery exclusion its plain meaning, the Court finds, as other courts have done, that the terms of this exclusion are clear and unambiguous.[7] *See Certain Underwriters at Lloyd's, London v. Brownie's Plymouth, Inc.*, 24 F.Supp.2d 403, 405 (E.D.Pa.1998); *River Thames Ins. Co. v. 5329 West, Inc.*, No. 95–0751, 1996 WL 18812, at *1 (E.D.Pa. Jan. 18, 1996); *Britamco Underwriters, Inc. v. Weiner*, 431 Pa.Super. 276, 636 A.2d 649, 652 (Pa.Super.1994), *appeal denied*, 540 Pa. 575, 655 A.2d 508 (Pa.1994). Therefore, if the assault and battery exclusion is applicable, it would exclude coverage in this case.

■ Pennsylvania law recognizes that if the injuries are alleged to have been caused by the intentional acts of the insured's patrons, then the assault and battery exclusion would preclude coverage. *See Altipenta, Inc., t/a Pennants v. Acceptance Ins. Co.*, No. 96–5752, 1997 WL 260321, at *3 (E.D.Pa. May 14, 1997), *aff'd*, 141 F.3d 1153 (3d Cir. 1998) (finding no coverage for negligent acts of bar owners arising out of shootings by a patron because "there is no suggestion that the three shootings were not intentional"); *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F.Supp. 1090, 1094–96 (E.D.Pa.1994), *aff'd*, 37 F.3d 1485 (3d Cir.1994) (finding no coverage for negligent acts of bar owners arising out of two intentional attacks by other patrons); *Terra Nova Ins. Co., Ltd. v. Thee Kandy Store, Inc.*, 679 F.Supp. 476, 478 (E.D.Pa.1988) (finding no coverage for negligent acts of bar owners arising out of an assault and battery by another patron); *Gene's Restaurant. Inc. v. Nationwide Ins. Co.*, 519 Pa. 306, 548 A.2d 246, 247 (Pa.1988) (finding no coverage for assault and battery where complaint alleged that victim was struck with fists, repeatedly shook with great force and violence, cast and thrown to the ground); *Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa.Super. 55, 639 A.2d

---

**7.** The parties do not dispute the legal validity of the assault and battery exclusion.

1208, 1211 (Pa.Super.1994) (finding no coverage for negligent acts of bar owners arising out of an attack by another patron with a broken beer bottle where the injured party claimed that her injuries "were solely the result of [the patron's] intentional, willful and purposeful acts").

On the other hand, Pennsylvania law also recognizes that a commercial general liability insurance policy, such as the instant Policy, although containing an assault and battery exclusion, may provide coverage if the injuries claimed in the complaint are alleged, in the alternative, to have been caused by the negligent conduct of the insured. For example, in *Britamco Underwriters, Inc. v. Weiner*, 431 Pa.Super. 276, 636 A.2d 649 (Pa.Super.1994), *appeal denied*, 540 Pa. 575, 655 A.2d 508 (Pa.1994), a patron filed suit against the owners of a bar alleging that a co-owner and an employee of the bar struck the patron in the neck. *Id.* at 650. The patron's underlying complaint asserted several theories of liability against the insureds, specifically, assault and battery, intentional, reckless, and/or negligent infliction of emotional distress, and general claims of negligence. *Id.* The insurer refused to defend its insureds, pursuant to an assault and battery exclusion, and filed a declaratory judgment action seeking a judicial determination of its duty to defend. The court held that the insurer had a duty to defend the insureds because the patron's complaint alleged alternative theories of recovery, i.e., accidental, intentional, or reckless acts, one of which may potentially come within the coverage of the policy. *Id.* at 652. The court also found that the patron's claims were not excluded by the assault and battery exclusion because "[the patron's] injuries may have been caused by the negligent acts of [the insured] and not necessarily by the intentional acts of any individual." *Id.See also Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1226 (3d Cir. 1989) (concluding that insurer had duty to defend where underlying complaint alleged that a firearm had been discharged "negligently, recklessly, and/or intentionally, willfully, wantonly, and maliciously" because such allegations raised possibilities that the shooting did not arise from an assault and battery); *Mechetti v. Illinois Ins. Ex-*

*change/Classic Syndicate*, No. 97–5855, 1998 WL 151024, at *3 (E.D.Pa. Mar.30, 1998) (stating its view that *Weiner* represents the current law of Pennsylvania); *First Oak Brook Corp. Syndicate v. Ultimate Sports Bar, Inc.*, No. 94–4395, 1995 WL 241459, at *4 (E.D.Pa. Apr.20, 1995) (following *Weiner* and concluding that insurer had duty to defend, despite the presence of an assault and battery exclusion, where the underlying complaint alleged negligent physical contact); *Britamco Underwriters, Inc. v. Logue's Tavern, Inc.*, No. 95–2997, 1995 WL 710570, at *5–6 (E.D.Pa. Dec.1, 1995) ("Where the complaint alleges that the harm causing event may have been committed negligently, *Weiner* controls.").

Thus, the Court must determine whether the allegations contained in the underlying complaint claim that the injuries were caused by the intentional acts of the Named Insureds' patron, or whether, in the alternative, the complaint alleges that they were caused by the negligent conduct of the Named Insureds.

2. *The allegations of the complaint potentially fall within the scope of the coverage.*

The underlying state court complaint filed by Clark and McCuff alleges four (4) causes of action against the Named Insureds: (1) infliction of emotional distress; (2) negligence, gross negligence, and negligence per se; (3) premises liability; and (4) punitive damages. It is the factual allegations averred in the complaint, and not the nature of the act that caused the injury, that are controlling in determining an insurer's duty to defend. *Nationwide Mut. Fire Ins. Co. v. Pipher*, 140 F.3d 222, 224 (3d Cir. 1998); *Mechetti v. Illinois Ins. Exch./Classic Syndicate*, No. 97–5855, 1998 WL 151024, at *3 n. 8 (E.D.Pa. Mar.30, 1998). The underlying complaint avers the following relevant facts:

26. Defendant Frazier then fired five shots, which in unknown order, entered the abdomen of Hamilton, entered the inside of Hamilton's wrist, while three (3) more flew toward the rear of the crowded bar.

28. As Douglas McCuff exited the kitchen, leading Shirley Clark, one of defendant Frazier's bullets entered Douglas McCuff's abdomen, passed through his body and entered Shirley Clark's stomach.

39. As a direct and proximate result of the above described unlawful and malicious acts of defendants Hamilton and Frazier, all committed under their authority as Philadelphia police officer, and while acting in that capacity, plaintiffs suffered grievous bodily harm, all of which is in violation of their rights under the laws and Constitution of the United States, in particular the Fourth, Fifth and Fourteenth Amendments thereof and 42 U.S.C. § 1983.

42. Defendants Hamilton and Frazier subjected the plaintiffs to these deprivations of their rights either maliciously, or by acting with a reckless disregard for whether plaintiffs' rights would be violated by their actions.

68. The acts of defendants Frazier and Hamilton, alleged in the preceding paragraphs, constitute the torts of assault and battery, all to plaintiffs' great detriment and loss.

72. The individual defendants intentionally and recklessly caused plaintiffs severe emotional distress.

73. The acts of the individual defendants alleged in the preceding paragraphs constitute the tort of intentional or reckless infliction of emotional distress, all to plaintiffs' great detriment and loss.

74. The individual defendants negligently caused plaintiffs' severe emotional distress.

84. The acts of the Stu's and Papa Doc's defendants alleged in the preceding paragraphs constitute the torts of negligence, gross negligence, and negligence per se, all to plaintiffs' great detriment and loss.

94. The Papa Doc's defendants are liable for the harm caused plaintiffs by the accidental, negligent or intentionally harmful acts of defendants Hamilton and Frazier, as is more fully set forth herein.

98. The herein described conduct of defendants Hamilton, Frazier, Stu's and the Papa Doc's defendants, was malicious, wanton, willful, reckless and intentionally designed to inflict grievous bodily harm, mental distress and/or death upon the person of plaintiffs.

Pl.'s Compl., at Ex. A.

 The Court finds that Drake had a duty to defend the Named Insureds. Although the complaint asserts an individual cause of action for assault and battery against Frazier, which is an intentional tort, and it refers to the harm causing acts as intentional, malicious, wanton, and willful, the complaint also asserts alternative theories of liability by referring to the harm causing acts as reckless, negligent, and accidental. Specifically, the complaint makes reference to the Named Insureds' "fail[ure] to provide emergency egress through the rear of the bar" as the "direct and proximate cause of plaintiffs' injuries." [8] Pl.'s Compl., at Ex. A, §§ 81(g), 83. Therefore, while the complaint does allege that the injuries were caused by the intentional conduct of Named Insureds' patron, in the alternative, it also states a claim against the Named Insureds on the basis of negligence. As the court found in *Weiner*, because the alternative claim of negligence within the underlying complaint may potentially come within the Policy's coverage, the Court finds that defendants are entitled to judgment as a matter of law and defendants' motion for summary judgment on the issue of Drake's duty to defend shall be granted.

### B. Duty to Indemnify.

 Unlike the duty to defend, which is triggered by claims that may potentially come within the coverage of the policy, the duty to indemnify depends on the liability of the insured and whether that liability actually comes within the scope of the policy. *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F.Supp. 1090, 1094 (E.D.Pa.1994), aff'd, 37 F.3d 1485 (3d Cir.1994); *Britamco Underwriters, Inc. v. O'Hagan*, No. 94–1160, 1994 WL 477551, at *3 (E.D.Pa. Sep.24, 1994) ("[The insurer] need not indemnify its insured if the conduct for which the insured is

---

**8.** In fact, this was the theory of recovery adopted by the state court judge in determining that the Named Insureds were negligent and that their conduct caused the accident.

found liable does not come within the scope of the policy."). "[I]t is within the province of the state court to render a decision on the underlying facts of th[e] dispute." *Id. See also Nationwide Mut. Fire Co. v. Shank,* 951 F.Supp. 68, 71 (E.D.Pa.1997), *appeal dismissed,* 127 F.3d 1096 (3d Cir.1997) ("[T]he duty to indemnify need not, and sometimes should not be, determined until the state court has evaluated the facts."); *Nationwide Mut. Fire Ins. Co. v. McNulty,* 1997 WL 805165, at *5 ("The indemnification issue ... requires the resolution of the merits of the underlying dispute."); *Nationwide Mut. Ins. Co. v. Sedicum,* No. 93–2996, 1993 WL 544414, at *2 (E.D.Pa. Dec.27, 1993) (deferring a decision on insurer's duty to indemnify until after a state court decision on the merits of the underlying case). Thus, when the claims in the underlying action have not yet been decided by the state court, the inquiry of the court hearing the declaratory judgment action is limited to an analysis of an insurer's duty to defend because "[t]he indemnification issue, by contrast, requires the resolution of the merits of the underlying dispute." *Nationwide Mut. Fire Ins. Co. v. McNulty,* No. 96–7304, 1997 WL 805165, at *5 (E.D.Pa. Dec.30, 1997).

In the case before the Court, however, Drake's declaratory judgment complaint and the underlying state court action are not pending simultaneously. Drake, while on notice, declined to defend and did not seek a stay of the underlying state court action pending the outcome of this case. In fact, a state court judge, Judge Cooperman, in a non-jury trial, has already rendered a decision on the merits of the underlying complaint. Judge Cooperman found in favor of and awarded damages to Clark, in her own right, and as Administratrix of the estate of McCuff, and against the Named Insureds. *See* Defs.' Mot. for Summ. J., at Exs. G, H. Therefore, the indemnification issue is ripe for disposition.

Judge Cooperman made specific findings of fact, and conclusions of law, the relevant ones being:

Findings of Fact:

22. The shooting of Clark and McCuff was an accident and did not arise from an assault and battery.

23. But for the fact that the emergency door was locked neither Clark nor McCuff would have been injured; however, they unreasonably placed themselves in front of the opened door space leading into the bar, before being advised by the police that the situation was under control.

Conclusions of Law:

8. The defendants' [Named Insureds'] conduct was negligent.

9. The defendants' [Named Insureds'] conduct, in contravention of the Philadelphia Code was negligent per se.

10. The negligence of defendants [Named Insureds] in padlocking the emergency exit, which prevented Clark and McCuff from fleeing the dangerous situation inside the bar, was a proximate cause of their injuries. (citations omitted).

Defs.' Mot. for Summ. J., at Exs. G, H.

The Insureds contend that the factual finding by Judge Cooperman in the state court action that the shooting of Clark and McCuff was an accident, and not an assault and battery, and the conclusion of law that the Named Insureds were negligent, are binding upon Drake in this case under principles of collateral estoppel. Therefore, according to the Insureds, Drake is liable for acts that come within the scope of the Policy, and coverage is not precluded by the assault and battery exclusion. In response, Drake avers that the findings of Judge Cooperman are not binding upon the determination of Drake's duty to defend and indemnify because Judge Cooperman's findings were "gratuitous." Further, Drake contends that, because it was not a party to the state court action, collateral estoppel is not applicable, and that to be denied the opportunity to be heard in this action on whether Clark's and McCuff's claims arose out of an assault and battery would leave it without a forum in which to argue the issue.

 Collateral estoppel prevents the relitigation of an issue that has already been litigated in a court of competent jurisdiction if: (1) the issue decided in the prior case is identical to one presented in the later case;

(2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *City of Pittsburgh v. Zoning Bd. of Adjustment of the City of Pittsburgh,* 522 Pa. 44, 559 A.2d 896, 901 (Pa.1989).

■ Drake misconstrues the applicability of collateral estoppel in the context of contracts of indemnity. As the Pennsylvania Supreme Court has stated:

> Generally speaking, a judgment recovered against an insured by an injured party is conclusive on the issues there determined in a subsequent proceeding by the injured party or by the insured against the insurance carrier for indemnity, providing the carrier had notice of the suit and an opportunity to defend.

*Renschler v. Pizano,* 329 Pa. 249, 198 A. 33, 35 (Pa.1938). This is so because, for collateral estoppel purposes, an insurer, or indemnitor, is in privity with its insured, or indemnitee. *Dally v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.,* 374 Pa. 476, 97 A.2d 795, 796 (Pa.1953). However, in order for a judgment against an indemnitee-insured to be conclusive in an action against the indemnitor-insurer, the indemnitee "must give the person to whom he looks for recompense [the indemnitor] reasonably 'definite, certain and direct' notice of the pending suit, so the [indemnitor] may defend it, or join in the defense, should [it] see fit to do so." *Renschler,* 198 A. at 36, *quoting Orth v. Consumers' Gas Co.,* 280 Pa. 118, 124 A. 296, 297 (Pa.1924). Thus, an insurer is bound by a judgment against its insured if the insurer receives complete and definite notice of the suit and has an opportunity to defend. In this case, since it is undisputed that Drake had complete and definite notice of the underlying state court action, the only issue is whether Drake had an opportunity to "defend it, or join in the defense" of the action in the state court.

The Pennsylvania Superior Court in *Vaksman v. Zurich Gen. Accident & Liab. Ins. Co.,* 172 Pa.Super. 588, 94 A.2d 186 (Pa.Super.1953), defined the opportunity to defend sufficient for collateral estoppel to apply against the insurer as "an opportunity to appear and interpose to the pending action any defense it might have." *Id.* at 189. In this case, Drake was invited to defend the underlying action, but declined to do so. While Drake filed a declaratory judgment action in this court, it did not seek a stay of the underlying litigation in the state court while it litigated the question of coverage in this court. In other words, by failing to defend or to seek a stay of the state court action, Drake gained the benefit of "two bites at the apple." If the Named Insureds prevailed on the state court proceedings, i.e., the Named Insureds were not negligent by padlocking the emergency exit, Drake was free of liability. If, on the other hand, the Named Insureds lost in state court, i.e., the Named Insureds were found to have been negligent, Drake could challenge in this court its duty to indemnify on the basis that the harm causing event was the result of an intentional act, and not the negligence of the Named Insureds. Pennsylvania law does not condone Drake's approach, and under *Renschler,* Drake is bound by the judgment rendered against the Named Insureds in the underlying action.

■ The Third Circuit, however, has recognized an exception to the *Renschler* rule in cases where in the underlying adjudication on the merits, "the interests of the insured and the insurer conflicted on that issue." *Ranger Ins. Co. v. General Accident Fire & Life Assurance Corp., Ltd.,* 800 F.2d 329, 331–32 (3d Cir.1986). Illustrative of the application of this exception is *Bracciale v. Nationwide Mut. Fire Ins. Co.,* No. 92–7190, 1993 WL 323594 (E.D.Pa. Aug.20, 1993). In *Bracciale,* the insured was charged by an injured party with willful, reckless, negligent, and careless conduct, unlawful resistance to arrest, and assault and battery. *Id.* at *2. The insurer refused to defend and indemnify the insured, relying upon an assault and battery exclusion. *Id.* The injured party recovered a judgment against the insured in the state court action on the theory that the

insured's negligence was a proximate cause of the injuries to the injured party. *Id.* at *3–4. In assessing the rights of the insured and the insurer, the court concluded that the insurer was not bound by the judgment in the underlying action because the interests of the insurer and the insured were in conflict. *Id.* Obviously, the insurer's position that the act of the insured was intentional would have been inconsistent with the insured's defense in the underlying action that he did not cause the injury.

■ By contrast, in this case, there is no conflict. In the state court action, the Named Insureds were charged with negligence in padlocking an emergency exit, which exposed Clark and McCuff to a shooting and resulted in their injuries. The Named Insureds defended not on the basis that padlocking the emergency exit was not negligent, but rather on the ground of causation, asserting that the intentional shooting by Frazier was a superseding or intervening cause that severed the chain of causation originated by the Named Insureds' act of padlocking the exit. Thus, the Named Insureds argued that the *intentional shooting by Frazier*, and not the padlocking of the emergency exit, was the proximate cause of Clark's and McCuff's injuries. *See* Defs.' Resp., at 11 n. 6. The argument presented in the state court by the Named Insureds is exactly what Drake wishes to argue to this Court. In other words, Drake had "an opportunity to appear and interpose to the pending action any defense it might have," i.e., that Frazier's intentional shooting was the cause of Clark's and McCuff's injuries, without undermining the Named Insureds' position that it was not negligent by padlocking the emergency exit. *Vaksman*, 94 A.2d at 189. Therefore, there was no conflict in the interests of the Named Insureds and Drake in the state court action.

■ The Court finds that the general rule promulgated by the Pennsylvania Supreme Court in *Renschler* binds Drake to Judge Cooperman's finding of fact that the shooting was an accident, and not an assault and battery, and conclusion of law that the negligence of the Named Insureds caused the accident. Because the liability of the Named Insureds falls within the coverage of the Policy, the Court concludes that Drake's duty to indemnify is implicated. Thus, defendants are entitled to judgment as a matter of law and defendants' motion for summary judgment on the issue of Drake's duty to indemnify shall be granted.

## V. CONCLUSION

Based on the foregoing, the Court finds that Drake has a duty to defend and duty to indemnify. Thus, defendants' motion for summary judgment shall be granted. The Court also concludes that Drake's cross-motion for judgment on the pleadings shall be denied as moot.

An appropriate Order follows.

### ORDER

**AND NOW,** this **29th** day of **January, 1999,** upon consideration of the motion to dismiss, or in the alternative, motion for summary judgment (doc. no. 5) of defendants Clark, in her own right, as Administratrix of the estate of McCuff, and as assignee of 101 Variety, Inc., Papa Doc's Lounge, and Randolph Hopson, plaintiff's cross-motion for judgment on the pleadings (doc. no. 8), plaintiff's motion for leave to file supplemental brief (doc. no. 11), and the responses thereto, it is hereby **ORDERED** as follows:

1. Plaintiff's motion for leave to file supplemental brief (doc. no. 11) shall be **GRANTED;**

2. Defendants' motion for summary judgment (doc. no. 5) shall be **GRANTED;** and

3. Plaintiff's cross-motion for judgment on the pleadings (doc. no. 8) shall be **DENIED AS MOOT.**

It is further **ORDERED** that **JUDGMENT** shall be entered in favor of defendants and against plaintiff, and the Clerk shall mark this case **CLOSED.**

**AND IT IS SO ORDERED.**